409 A.2d 132.

STATE *vs.* JAMES CARVALHO.

DECEMBER 12, 1979.

PRESENT: Bevilacqua, C.J., Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.   This indictment charging the defendant, James Carvalho (Carvalho), with rape was tried before a Superior Court jury. Carvalho was found guilty, and the trial justice denied his motion for a new trial. His appeal is two-fold. He contends that the trial justice violated his sixth-amendment right by denying his attorney's request that an alleged medical expert be allowed to sit at counsel table during the examination and cross-examination of the prosecution's medical experts. He also challenges the trial justice's denial of his motion for a new trial.

According to the prosecutrix, at approximately 2 a.m. on October 22, 1976, she returned home after having spent the evening at a local drinking establishment. As she stood on the porch of her home searching for the key to the front door, a stranger driving a small, dark car stopped and asked her to go for a ride with him. The individual departed when she swung her purse at him and told him to leave. A few minutes

later, the prosecutrix was grabbed from behind and pulled along a driveway into a neighboring backyard where the rape occurred. She screamed once for help, but the assailant clapped his hand over her mouth, saying that if she made any noise, he would kill her. The sexual assault ended when the prosecutrix told the attacker that a car had driven up. Upon hearing this, he, followed a few feet behind by his victim, walked down the driveway into the street. The assailant fled when the prosecutrix spotted two police cars on a neighboring street and began to scream for help.

A police officer responding to the screams tried to calm the victim in order to determine what had occurred. He then sent out a broadcast containing a description of the assailant. Another officer apprehended Carvalho approximately 5 minutes later in the vicinity of the assault. Carvalho, who had been caught driving a dark-colored sports car at a high speed with its lights out, was returned to the scene of the incident, where the prosecutrix immediately identified him as the man who had raped her.

In his testimony, Carvalho substantiated several of the events described by the prosecutrix, including one involving a sexual interlude. He insisted, however, that the intercourse was an episode in which both parties had voluntarily participated.

At trial, the prosecution presented two members of the staff at Women and Infants' Hospital, a physician and a nurse, both of whom testified to the condition of the prosecutrix upon her entry to the hospital's emergency room. The physician described the multiple abrasions located on her body and stated that findings derived from the pelvic examination were consistent with forcible penetration.

Prior to the presentation of this medical testimony, Carvalho had asked that a nurse who worked at Rhode Island Hospital's emergency room be permitted to sit alongside his counsel so that she could point out various portions of the direct testimony that might be fair game for cross-exami-

nation. The trial justice denied this request on the ground that such a procedure "would open the door to a new and perhaps unwise deviation from the normal courtroom procedure * * *." Carvalho argues that this refusal came at a crucial time in the trial and deprived him of his sixth-amendment right to the effective assistance of counsel.

Carvalho's contention that the sixth amendment encompasses the right to have an expert sit with defense counsel to aid in the cross-examination of witnesses runs contrary to both the historical development of the amendment and recent cases that define the term "counsel" as set forth in the amendment. Under British common law, a defendant on trial for a felony or treason could not be represented by counsel, whereas a person charged with a misdemeanor was entitled to full assistance of counsel. 1 J. Chitty, *Criminal Law* 410 (4th ed. 1841). The colonies refused to embrace this rule. Likewise, the states speedily ratified a congressional proposal that now constitutes the first ten amendments to the Federal Constitution. *Powell* v. *Alabama*, 287 U.S. 45, 61, 53 S. Ct. 55, 61, 77 L. Ed. 158, 166 (1932). The sixth amendment guards an accused from being convicted because of his ignorance of legal and constitutional rights and his consequent failure to assert such rights. *Johnson* v. *Zerbst*, 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938).

Counsel provides a defendant with clear steerage through a maze of unfamiliar legal procedure and jargon and focuses on the central issues of the case. The sixth amendment thereby gives substance to the due-process right to a fair hearing. The true significance of this right to our system of justice can be seen in the following observation of the United States Supreme Court:

> "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or

bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence."

Powell v. Alabama, 287 U.S. at 68-69, 53 S. C. at 64, 77 L. Ed. at 170.

The term "counsel" as found within the context of the sixth amendment has not been construed to include the assistance of a person uneducated in the law. *United States* v. *Wilhelm,* 570 F.2d 461 (3d Cir. 1978); *United States* v. *Cooper,* 493 F.2d 473 (5th Cir. 1974); *United States* v. *Whitesel,* 543 F.2d 1176 (6th Cir. 1976); *State* v. *Spurgeon,* 200 Neb. 719, 265 N.W.2d 224 (1978). Indeed, even in those cases in which a defendant has sought the assistance of an unlicensed or disbarred attorney, federal courts have refused to hold that the right to counsel encompasses such individuals. *United States* v. *Grismore,* 546 F.2d 844 (10th Cir. 1976); *Turner* v. *American Bar Ass'n,* 407 F. Supp. 451 (1975).

It cannot be denied that courts have in many instances allowed a defendant the assistance of a lay person. Such permission rests, however, not upon a constitutional entitlement, but with the discretion of the court. *United States* v. *Jordan,* 508 F.2d 750 (7th Cir. 1975); *United States* v. *Stockheimer,* 385 F. Supp. 979 (W.D. Wis. 1974); *State* v. *Unger,* 103 N.J.L. 18, 134 A. 886 (Sup. Ct. 1926), *affirmed,* 104 N.J.L. 448, 140 A. 922 (E & A 1928); *State* v. *Peterson,* 266 N.W.2d 103 (S.D. 1978); Annot., 87 A.L.R.3d 238 (1978). Thus, the issue of whether a non-party, such as the nurse, should be permitted to sit at counsel table is a matter that rests entirely within the sound discretion of a trial jus-

tice. Here, we cannot interfere unless we are satisfied that there has been an abuse of that discretion. For the reasons which follow we find that the trial justice's refusal to allow the nurse to sit at counsel table was an acceptable exercise of his judicial discretion.

We would but point out that at no time did the defense offer anything by way of evidence or an offer of proof which would satisfy the trial justice that the Rhode Island Hospital nurse had the requisite expertise in the areas to which most of the physician's testimony was directed. The crucial witness in this aspect of the case was not the other nurse, but rather it was the physician who told the jury in simple and understandable terms why he believed the penetration was forced rather than consensual. The mere representation that a nurse "has experience in the emergency room of Rhode Island Hospital" does not qualify her as one who could render expert assistance to Carvalho's counsel.

Furthermore, it should also be remembered that the nurse was not excluded from the courtroom. A recess was taken during cross-examination; and while the transcript is silent concerning what went on during this period, upon resumption of the trial the physician was asked what was meant by the phrase "phallic intromission." Perhaps counsel's use of this phrase is some indication that during the recess he did confer with the nurse who performed her chores at Rhode Island Hospital's emergency room.

Carvalho also contends that the trial justice erred in denying his motion for a new trial when he rejected the defense's assertion that the jury's verdict was contrary to the weight of the evidence. In expanding on this phase of his appeal, Carvalho reminds us that a trial judge, in considering motions for new trial, must consider the evidence in light of his charge to the jury. Carvalho first points out that the jury was told that a guilty verdict was in order only if the prosecutrix had resisted Carvalho's advances "to the best of her ability." He contends that the jury's verdict was against the law because there was absolutely no evidence that would justify

an inference that the prosecutrix resisted to the best of her ability.

Carvalho lists the following factors that, according to him, make it clear that the prosecutrix, in resisting his advances, had failed to expend her best efforts: she screamed only once; she did not kick, bite, or punch her assailant; she failed to do all this even though there was no evidence that he ever exhibited a weapon or claimed to have one. This line of reasoning falls upon deaf ears.

Today the law does not expect a woman, as part of her proof of opposition or lack of consent, to engage in heroics when such behavior could be useless, fruitless, or foolhardy. Fighting[1] to protect one's virtue can be a risky business. All that is required is that the woman offer such resistance as seems reasonable under all the circumstances. *State* v. *Verdone*, 114 R.I. 613, 621, 337 A.2d 804, 810 (1975). Resistance to the best of one's ability, in our opinion, is synonymous with the phrase "offer such resistance as would appear reasonable under the circumstances." An analysis of *Verdone* clearly indicates that resistance is a relative concept. A variety of factors must be considered, such as the comparative strength of the parties, the age and condition of the victim, and the degree of force exhibited by the assailant. If the woman believes that the resistance will lead to her being seriously injured, she is not required to test out this theory by screaming out or exhibiting force against the attacker.

The evidence presented here was more than sufficient to support a finding that the prosecutrix did resist Carvalho's advances to the best of her ability. She testified that upon being grabbed from behind, she screamed for someone in the house before Carvalho clapped his hand over her mouth. He threatened to kill her if she made any noise. The force with which she was pulled off the porch and along the driveway and into the yard against her will is further substantiated by

---

[1] *See Reidhead* v. *State*, 31 Ariz. 70, 72, 250 P. 366-67 (1926), and *Starr* v. *State*, 205 Wis. 310, 312, 237 N.W. 96, 97 (1931), where the courts observed that the victim had to "resist to the utmost."

the police officer's discovery of a sock and shoe located approximately 5 feet apart on the driveway leading to the yard. The abrasions found on the victim's elbows, knees and sacral area are a further indication of the predatory conduct exhibited by Carvalho. The record amply justifies the trial justice's denial of the motion for new trial.

The defendant's appeal is denied and dismissed, the judgment of conviction is affirmed, and the case is remanded to the Superior Court.

*Dennis J. Roberts*, Attorney General, *James P. Renaldo*, Special Assistant Attorney General, for plaintiff.

*Samuel A. Olevson*, for defendant.