**STATE,**

v.

**Karl KRUSHNOWSKI.**

No. 2000–78–C.A.

Supreme Court of Rhode Island.

June 13, 2001.

Aaron Weisman, Providence, for Plaintiff.

Randy Olen, Providence, John F. Cicilline, Bristol, for Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The defendant, Karl Krushnowski (defendant), has appealed a judgment of conviction on three counts of first-degree sexual assault—for which he was sentenced to three consecutive seven-year prison terms—and one count of assault with in-

tent to commit first-degree sexual assault. This case came before the Supreme Court for oral argument on May 8, 2001, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be summarily decided.

The defendant's convictions resulted from events that occurred in the early morning hours of July 30, 1995. Nadine F.[1] (complainant) testified at trial that at approximately 3 a.m., she was telephoning her boyfriend, using a pay phone in front of "Fred's Place," a bar in Pawtucket, Rhode Island. During her conversation, she noticed a car passing by repeatedly and commented to her boyfriend that this made her uneasy. According to complainant, before she could hang up the phone, a man she later identified as defendant grabbed her from behind and punched her in the face. In the ensuing struggle he hit her, fractured her arm, and threw her head-first into his car, a two-seater gray Mercedes. He then sped away with her.

The complainant's account of these events was confirmed by testimony from three men who were in the parking lot of Fred's Place at the time Nadine was abducted. The men saw defendant's Mercedes drive around the block twice, and saw the driver park the car, grab and punch the complainant, pull her towards his car, and drive away with her. Although the men first thought they were witnessing a "boyfriend/girlfriend * * * dispute," they decided to call the police about the incident because the complainant was screaming loudly, and defendant appeared to be more violent and anxious to leave the scene as the three men approached him.

The complainant further testified that defendant drove to a nearby supermarket parking lot while holding her head down and threatening her to remain quiet. When the complainant refused to obey defendant's demands to undress, defendant tore her clothes off. The complainant testified that defendant then forced her to perform fellatio on him, put his mouth and hand in her vagina and repeatedly tried to penetrate her with his penis. At that time, the complainant became aware of an approaching police car and started to scream for help.

According to testimony by one of the arresting officers, upon their arrival, defendant jumped into the driver's seat, and the complainant exited the car, yelling hysterically that defendant was raping her. She was completely undressed except for a torn bra hanging from her. One of her eyes was badly bruised. Subsequently, the complainant was taken to the hospital where she was treated for a fractured elbow, pain, and bruises on her face and leg. The defendant, who was wearing only a shirt, was arrested and placed in the police car.

Pursuant to G.L.1956 §§ 11–37–2 and 11–37–3, defendant was indicted for three counts of sexual assault, specifically fellatio, cunnilingus, and digital penetration while using force or coercion. In addition, he was charged with assault of the complainant with intent to commit first-degree sexual assault, in violation of G.L.1956 § 11–5–1, and assault and battery resulting in serious bodily injury, in violation of § 11–5–2. Following a four-day jury trial in July 1997, during which the trial justice dismissed the charge of assault and bat-

tery, defendant was convicted of the remaining four charges and sentenced to three seven-year prison terms to run consecutively.[2] The defendant appealed.

■ In his appeal, defendant contended that the trial justice committed error in denying his motion *in limine* to prohibit the state from questioning defendant's character witnesses about defendant's prior criminal contacts. This Court has held that specific instances of conduct are permitted in the cross-examination of character witnesses. *State v. Lamoureaux,* 558 A.2d 951, 953–54 (R.I.1989) (citing *Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948)). "[A] defendant, by attempting to prove his good name, opens up a subject otherwise closed by law for his protection." *Id.* at 953. Although we have held that prior convictions not involving dishonesty or false statement are inadmissible to confront character witnesses who are expected to testify with respect to a defendant's veracity, *State v. Stewart,* 712 A.2d 362 (R.I.1998) (per curiam), defendant in the instant case had informed the state that he intended to call character witnesses to testify on his "reputation for peaceableness and truth telling." In addition, the trial justice informed defendant that he would give an instruction to the jury that any reference to defendant's prior criminal history was used only "to test the credibility of the witnesses." Given that one of defendant's prior criminal contacts was for assault, confronting character witnesses with this fact would have been permissible.

This case is distinguishable from *State v. Benoit,* 697 A.2d 329, 331 (R.I.1997) (per curiam), in which we held that "excluding evidence of good character in respect to a pertinent trait cannot generally be considered harmless." In *Benoit,* the defendant was precluded at trial from introducing certain evidence of his good character, and we advised that a preliminary examination should be held to determine the relevance as well as a foundation for opinion evidence. *Id.* at 330–31. In the present case, defendant conceded that the witnesses would testify on "defendant's reputation for peaceableness and truth telling," and he sought to prevent the state from referring to any of defendant's prior contacts with law enforcement. In these circumstances, the trial justice was not required to hold a hearing *in limine.* We therefore conclude that the trial justice correctly denied defendant's motion.

■ The defendant further suggested several errors in the trial justice's instructions to the jury, which we shall address briefly. The standard for jury instructions is clearly established. The charge given by a trial justice need only "adequately cover[ ] the law." *State v. Grundy,* 582 A.2d 1166, 1170 (R.I.1990). A trial justice's jury instructions will be upheld if they neither reduce nor shift the state's burden of proof. *State v. Gordon,* 508 A.2d 1339, 1349 (R.I.1986). On review, we examine the instructions in their entirety to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them, *State v. Gomes,* 604 A.2d 1249, 1256 (R.I.1992), and we review challenged portions of jury instructions "in the context in which they were rendered." *Gordon,* 508 A.2d at 1349.

■ In his instructions on "reasonable doubt," the trial justice provided guidance to the jury by reading from *Victor v. Nebraska,* 511 U.S. 1, 27, 114 S.Ct. 1239, 1253, 127 L.Ed.2d 583, 603 (1994) (Gins-

---

**2.** After his conviction, defendant was released on bail and failed to appear at the sentencing hearing on July 30, 1997. The defendant was not apprehended by the authorities until 1999, and he was sentenced on July 21, 1999.

burg, J., concurring in part and concurring in the judgment), after first emphasizing that the state bore the burden of proof on all counts. He explained to the jury that reasonable doubt required "proof that leaves you firmly convinced of the defendant's guilt." Moreover, the jury was apprised that reasonable doubt is "founded on reason, not a doubt arising out of whimsy or caprice," that "mere suspicion, no matter how strong, is never enough to convict," an instruction we have previously considered sufficient. *State v. Thorpe,* 429 A.2d 785, 789–90 (R.I.1981). In the context of the entire instruction, we conclude that the instructions on reasonable doubt were entirely correct.

█ The defendant also contended that the trial justice's instruction on force and coercion was erroneous. Although the trial justice did not read from §§ 11–37–1 and 11–37–12, which define those terms, we believe that his instructions captured the essence of the statutes. He stated that the victim was required only to "offer such resistance as seem[ed] reasonable under all the circumstances," and she did not have to resist if she "felt that resistance would lead her to serious bodily injury." This instruction is very similar to the one we approved in *State v. Carvalho,* 122 R.I. 461, 467, 409 A.2d 132, 135–36 (1979), and hence we conclude that the trial justice's instruction on this issue was correct.

█ In addition, we discern no error in the trial justice's instruction on the act of cunnilingus. We have previously held that defining the term as " 'sexual perversion committed with the mouth and female sex organ' " was an accurate instruction. *State v. Cembrola,* 469 A.2d 362, 365 (R.I. 1983). Moreover, the act does not require actual vaginal penetration; rather, the necessary penetration or intrusion into the female genitalia is assumed, *State v. Beaulieu,* 674 A.2d 377, 378 (R.I.1996) (per cu-

riam), and therefore, the instruction was sufficient.

█ We further believe that defendant's request for a charge of simple assault was properly denied. "It is well settled that a criminal defendant is entitled to an instruction on a lesser included offense if such an instruction is warranted by the evidence." *State v. Rodriquez,* 731 A.2d 726, 729 (R.I.1999) (per curiam) (quoting *State v. Figueras,* 644 A.2d 291, 294 (R.I.1994)). In this case, no " 'actual and adequate dispute exist[ed]' regarding the element that distinguishes the greater and lesser charges." *Id.*

█ At the sentencing hearing, defendant's counsel moved to dismiss count four of the indictment, the assault with the intent to commit sexual assault. The sentencing justice responded, "For the purpose of sentencing, I would dismiss the count that charges attempted first degree." Later, the justice and the attorneys agreed that "[defendant] is not going to be sentenced" on count four. The trial justice had no authority to dismiss the count or to merge it for sentencing. The state has acknowledged the error in the trial justice's failure to instruct on intent on count four, and therefore, we vacate defendant's conviction on that count. The defendant was in the anomalous position of presenting as his defense mutual consent to the acts, yet at the same time he argued that the absence of a specific intent instruction for the assault was reversible error. The vacating of his conviction on count four does not affect defendant's sentence, given that the justice did not sentence on this count. Therefore, there is no necessity for resentencing in respect to this count.

█ The defendant's final issue related to the trial justice's allegedly denying the defendant access to his presentence re-

port. Pursuant to Rule 32(c)(3) of the Superior Court Rules of Criminal Procedure, the court is required to "make the report available for inspection to counsel for the defendant, *or* to the defendant himself or herself if the defendant is not represented by counsel, and afford an opportunity to the defense to comment thereon." (Emphasis added.) If any portions of a report are withheld for reasons specified by Rule 32(c)(3)(i) through (iii), the court must "apprise the parties of that fact and state the reasons why it has not made the entire report available." At the sentencing hearing, the defendant's attorney moved to be permitted to disclose the content of the presentence report to his client, but the trial justice denied the motion. Our review of the record revealed that the trial justice did make the presentence report available to the defendant's counsel and gave him an opportunity to comment on it. Therefore, having disclosed the report to the defendant's counsel, the trial justice properly complied with the rule.

In conclusion, therefore, the appeal is denied in part and sustained in part. We vacate the conviction on count four, and in all other respects affirm the judgment of conviction of the Superior Court, to which the papers of the case may be returned.[3]

---

**3.** The defendant's motions for leave to submit post-argument memoranda were denied by the Court.