STATE

v.

**Gerald LYNCH.**

**No. 2007–81–C.A.**

Supreme Court of Rhode Island.

May 6, 2011.

Christopher R. Bush, Department of Attorney General, for State.

Paula Rosin, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J.,
GOLDBERG, FLAHERTY, ROBINSON,
and INDEGLIA, JJ.

## AMENDED OPINION

Justice GOLDBERG, for the Court.

The defendant, Gerald Lynch (Lynch or defendant), is before the Supreme Court on appeal from a conviction of four counts of first-degree sexual assault, for which he

was sentenced to twenty years at the Adult Correctional Institutions (ACI), ten years to serve, on each count, all sentences to run concurrently. The defendant alleges that the trial justice erred in denying his motion for judgment of acquittal and, in the alternative, his motion for a new trial. He also asserts that the trial justice committed an error of law when he allowed certain evidence before the jury and in his instructions to the jury. For the reasons set forth in this opinion, we affirm the judgment of conviction.

## Facts and Travel

Although the crimes giving rise to these convictions occurred over twenty years ago, the incidents were not disclosed to anyone until the complainant, M.G. (complainant or M.G.),[1] appeared at the Pawtucket Police Department in January 2004 and reported having been sexually assaulted by defendant almost twenty years earlier.[2] During the 1980s, M.G. worked at Blease Florist Shop, which was owned and operated by defendant. M.G. reported to the police that defendant had sexually assaulted him during a three-year period, from 1982 to 1985, when he was between twelve and fifteen years of age.[3] As part of the police investigation, M.G. telephoned Lynch and confronted him about the sexual assaults. Lynch did not deny that a sexual relationship occurred between them; however, he insisted—in the initial telephone conversation and then at trial—that the sexual activity was consensual.[4]

---

1. In order to protect the identity of the complaining witness, we have redacted his name from this opinion.

2. M.G. testified that he had never forgotten what had happened but "just couldn't take it anymore. I had to—I had to say what happened to me."

3. We note that Rhode Island did not enact a statute distinguishing the crime of child mo-

lestation from that of sexual assault until 1984, when the General Assembly enacted G.L.1956 §§ 11–37–8.1 and 11–37–8.3, as enacted by P.L.1984, ch. 59, § 2. Together, these statutes define first- and second-degree child molestation sexual assault, making it a crime for a person to engage in sexual penetration or sexual contact with a person fourteen years of age or under.

In April 2004, a grand jury returned an indictment charging defendant with nine counts of first-degree sexual assault, in violation of G.L.1956 § 11–37–2; that statute provides in pertinent part that a person is guilty of first-degree sexual assault when he or she "engages in sexual penetration with another person, and * * * [t]he accused uses force or coercion." In October 2006, the case was tried to a jury. M.G. testified about the nature of his employment at Blease Florist, describing his duties as working in the greenhouse, cleaning the property and performing basic manual labor. The complainant testified that the first time defendant touched him sexually was in the summer of 1982, when he was twelve years old.[5] He explained that he and Lynch were in Lynch's car, returning from a job planting flowers in South County, when Lynch stopped to buy some beer. After consuming some beer in his parked truck, and offering some to M.G., Lynch placed his hand inside M.G.'s bathing suit and "fondled [M.G.'s] penis and scrotum for what seemed to be three to five seconds."[6] M.G. testified that he did not do anything in response because he was afraid of Lynch, explaining that defendant "was a father figure, basically the same age as my dad, and he was bigger than me; and I have never had anything like that happen to me before, and I was embarrassed about it."

M.G. then testified about the nine incidents of first-degree sexual assault set forth in the indictment; eight of which consisted of Lynch performing oral sex on M.G. and a single instance when M.G. was forced to perform oral sex on Lynch. According to complainant, the sexual assaults followed a general pattern: each encounter took place during the afternoon in the shop's unfinished basement, in or near the shop's makeshift bathroom—an area that consisted of a toilet mounted on a platform, enclosed by a shower curtain—and often after M.G. used the toilet. According to M.G., with the exception of Marion Blease, the previous owner, no one was in the shop. Mrs. Blease never came downstairs, M.G. testified, because Lynch would tell her to remain in the shop to watch for customers and to answer the phone. The complainant testified that most of these assaults occurred after one or both of them had been drinking alcohol or smoking marijuana. M.G. also testified that on other occasions, while in the shop, Lynch would slap his buttocks and punch him.

Of the eight instances in which Lynch engaged in fellatio, M.G. testified that defendant either unbuttoned or removed M.G.'s pants and then performed oral sex on him. M.G. testified that in all but two instances—which took place during M.G.'s freshman year of high school—Lynch held him on the toilet's platform with "both of his hands[.]" The witness demonstrated to the jury how Lynch physically held him by the arms, stating that there "was a pressure that you couldn't move. He held

---

4. This conversation, unbeknownst to defendant, was recorded by the police and played for the jury. At trial, Lynch insisted that M.G. did not start working for him until he was eighteen years old and, therefore, that their consensual sexual relationship began after M.G. attained the age of majority.

5. The complainant's date of birth is May 11, 1969.

6. At this point, the trial justice made an initial cautionary instruction to the jury. He reminded the jury that Lynch had been charged with fellatio and that, therefore, the evidence about the 1982 incident, if the jury chose to believe it, was only to be considered on the issues of defendant's intent or the existence of a plan with respect to complainant. Lynch was not charged by the grand jury with respect to M.G.'s allegations about this incident in 1982.

me there and there was no way I was going anywhere." M.G. testified that he did not try to physically resist the assaults because defendant was much bigger than he and because he was afraid. However, with respect to two of the incidents that occurred during his freshman year, M.G. could not recall whether or how much force Lynch used to accomplish the act. The state dismissed those counts at the close of evidence.

The complainant also described an incident that occurred when he was in the tenth grade, during which Lynch forced M.G. to perform oral sex on him. M.G. testified that "[i]t was one of the times where he had me masturbating him. I was behind him and he turned and physically forced me on my knees and inserted his penis into my mouth and made me perform oral sex on him, and he ejaculated into my mouth." M.G. stated that he did not attempt to resist defendant's force because he was "unable to[;]" but he did state that he was crying during this episode.

M.G. testified that he was unable to physically resist defendant because of defendant's size and strength and because he was afraid. He testified that he told Lynch several times that he did not want to engage in sexual activities with him, although he could not recall specifically when he did so. During his sophomore year of high school, M.G. testified, he "couldn't take it anymore" and, after Lynch punched him, he struck Lynch. M.G. testified that he "tackled [Lynch] and got him into a headlock on the floor in the flower shop, and [Lynch] grabbed me by my testicles and squeezed, and I had to let go." At that point, M.G. testified, the sexual assaults stopped.

Additionally, the state elicited testimony from M.G. about the impact that these sexual assaults had on his life, stating that he would "self-medicate with drinking, using different drugs, [and] marijuana[,]" and that he "had a hard time holding a job, staying focused, [and had] periods of depression." M.G. also testified that he was unable to have a "normal sex life[.]" This testimony was stricken from the record, and Lynch moved to pass the case on the ground of a discovery violation, arguing that the state had violated Rule 16 of the Superior Court Rules of Criminal Procedure because defendant had not been notified that M.G. was going to testify "about his opinion or about his personal sexual life following 1992" The trial justice denied the motion to pass.

Although defendant did not testify, his defense at trial was that this was a consensual relationship which did not commence until M.G. was older and that complainant was mistaken about when he worked for Lynch and how old he was at the time. Lynch presented testimony from two former employees and his daughter, who collectively testified that they did not remember seeing M.G. in the summers of 1982 or 1983, but that they remembered that M.G. worked there regularly as a driver in 1985.

After the close of the evidence, the state dismissed two counts of the indictment, and defendant moved for a judgment of acquittal on the remaining counts. The trial justice reserved decision until after the jury's verdict.[7] The jury found defendant not guilty on three counts of first-degree sexual assault, for which there was conflicting testimony about whether M.G. was employed at Blease Florist Shop when these offenses were alleged to have oc-

---

7. We note that defendant properly had moved for a judgment of acquittal at the close of the state's case; however, by agreement, the mo-

tion was not argued until the close of the evidence.

curred. The jury found Lynch guilty on the remaining four counts of first-degree sexual assault, which included the incident in which Lynch forced M.G. to perform oral sex on him and three assaults that took place during his sophomore year of high school. The defendant's motion for judgment of acquittal and motion for a new trial were denied, and Lynch was sentenced to the ACI. This appeal ensued.

Before this Court, Lynch argues that the trial justice erred in denying his motions for acquittal and for a new trial because the state failed to prove beyond a reasonable doubt that he used force or coercion, a necessary element of first-degree sexual assault. Lynch also contends that the trial justice erroneously admitted, and allowed the jury to consider, evidence of complainant's size and age as compared to that of defendant. Next, Lynch alleges that the trial justice erred when he instructed the jury concerning the defense of consent. Lastly, Lynch contends that the trial justice erred in admitting testimony about the effects of the sexual assaults on M.G., asserting that this testimony was not probative and was not disclosed to defendant during discovery.

## Analysis

### I

### Sufficiency of the Evidence

■ The defendant's first assignment of error is that the trial justice erred when he denied defendant's motion for judgment of acquittal and his motion for a new trial. In reviewing a trial justice's denial of a motion for judgment of acquittal, this Court applies the same standard as the trial justice. We "must view the evidence in the light most favorable to the state, * * * giving full credibility to the state's witnesses, and draw therefrom all reasonable inferences consistent with guilt." *State v. Rodriguez*, 996 A.2d 145, 148 (R.I.

2010) (quoting *State v. Ros*, 973 A.2d 1148, 1159 (R.I.2009)). A motion for judgment of acquittal may be granted only if the evidence, viewed in the light most favorable to the prosecution, is insufficient to establish the defendant's guilt beyond a reasonable doubt. *Id.* at 148–49.

■ "[W]hen reviewing a motion for a new trial, the trial justice must determine 'whether the evidence adduced at trial is sufficient for the jury to conclude guilt beyond a reasonable doubt.'" *State v. Peoples*, 996 A.2d 660, 664 (R.I.2010) (quoting *State v. Stone*, 924 A.2d 773, 779 (R.I. 2007)). When making this determination, "the trial justice acts as a thirteenth juror, exercising 'independent judgment on the credibility of witnesses and on the weight of the evidence.'" *State v. Heredia*, 10 A.3d 443, 446 (R.I.2010) (quoting *State v. Imbruglia*, 913 A.2d 1022, 1028 (R.I.2007)). "Specifically, 'the trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury.'" *Heredia*, 10 A.3d at 446 (quoting *State v. Texieira*, 944 A.2d 132, 140 (R.I. 2008)). If the trial justice has "articulated an adequate rationale for denying" the motion for a new trial, and has not misconceived or overlooked material evidence, we accord his or her ruling great weight and will leave it undisturbed. *Rodriguez*, 996 A.2d at 149 (quoting *State v. Bergevine*, 942 A.2d 974, 981 (R.I.2008)); *see also Heredia*, 10 A.3d at 446 (citing *State v. Horton*, 871 A.2d 959, 967 (R.I.2005)).

The defendant's primary appellate argument rests on his contention that there was insufficient evidence to convict him of first-degree sexual assault because the state failed to prove the essential element of "force or coercion" beyond a reasonable

doubt. Specifically, Lynch contends that the state failed to offer sufficient proof that he used force or coercion sufficient to overcome M.G., because complainant testified that he never physically resisted defendant, nor did he ever tell him "no." The defendant contends that the trial justice should have granted an acquittal or a new trial based on the insufficiency of the evidence.

In *State v. Jacques*, 536 A.2d 535, 537 (R.I.1988), we reiterated that, to prove first-degree sexual assault by force or coercion, the state was required to show "proof of overcoming the victim's resistance by force, fear, or other prohibited conditions * * * required under common law." We also explained that, based on the statutory definition of force and coercion, as embodied in § 11–37–1, "proof of force beyond that which is used in the consummation of the act is required to sustain a conviction[.]" *Jacques*, 536 A.2d at 537; *see* § 11–37–1(2)(ii) (" 'Force or coercion' means when the accused * * * [o]vercomes the victim through the application of physical force or physical violence.").

We consistently have stated that, in determining whether force was employed by the assailant, our focus is on what the accused did or did not do, without reference to how the complainant responded or should have responded. *Jacques*, 536 A.2d at 538. Section 11–37–12 clearly provides that "it shall not be necessary to prove that the victim physically resisted the accused if the victim reasonably believed that resistance would be useless and might result in his or her serious bodily injury." "All that is required is that the [complainant] offer such resistance as seems reasonable under all the circumstances." *State v. Carvalho*, 122 R.I. 461, 467, 409 A.2d 132, 136 (1979). In determining whether a victim's resistance was reasonable, we consider "[a] variety of factors * * * such as the comparative strength of the parties, the age and condition of the victim, and the degree of force exhibited by the assailant." *Id.; see also State v. Dinagen*, 639 A.2d 1353, 1355–56, 1357 (R.I.1994).

This Court previously has concluded that there was sufficient evidence of physical force in situations in which the defendant approached a complainant from behind and physically forced her into a kneeling position by the weight of his chest, *Jacques*, 536 A.2d at 538, and also when the defendant pulled the complainant down to a couch and bed before consummating the act. *State v. Pignolet*, 465 A.2d 176, 184 (R.I.1983). In one of these cases, we noted that the complainant was "forced into a position of helplessness * * * in which * * * she could not kick, hit, or otherwise defend herself," *Jacques*, 536 A.2d at 538, and in the other, that the defendant "physically prevented her from getting away from him[.]" *Pignolet*, 465 A.2d at 184. The uncontradicted evidence in this case was that a 200–pound man, approximately forty years of age, constrained a 120–pound, teenager with both of his arms, with such a degree of "pressure that you couldn't move[,]" while performing oral sex on him. The actual manner in which this force was employed was not only testified to, it was demonstrated to the jury. We fail to see how this evidence is not sufficient to satisfy the requirements of § 11–37–1. Additionally, we cannot say that physically forcing M.G. to his knees for oral sex—while the boy is crying—does not constitute sufficient force as contemplated by the statute. It was undisputed that M.G. was unable to move and was in a position of helplessness; thus it was reasonable for him not to resist, especially in light of the size and age disparity between the boy and assailant.

We also note that although defendant characterizes complainant's testimony as never having told defendant "no," we view this evidence differently. Specifically, during the state's direct examination of complainant, M.G. testified that he "communicate[d] to [Lynch] that [he] didn't want this to happen" on several occasions, but could not recall the specific date when he did so. We do not agree with defendant that not recalling when he told him "no" amounts to not telling him "no." It simply means he could not remember when this occurred.

Based on the foregoing, the trial justice did not err when he denied defendant's motions for judgment of acquittal and for a new trial. Viewed in the light most favorable to the prosecution, as is required under the standard for a motion for judgment of acquittal, we are of the opinion there was sufficient evidence to establish Lynch's guilt beyond a reasonable doubt with respect to the element of physical force. Further, when the trial justice denied defendant's motion for a new trial, he declared that he had considered the evidence in light of his jury charge, that he found complainant to be a credible witness, and that he agreed with the jury's verdict. These findings bring the new trial inquiry to an end, and the motion was correctly denied. We reject defendant's contention that the trial justice misconceived or overlooked material evidence in rendering this decision.

## II

### Admissibility and Instructions Regarding Evidence of Size and Age

■■■ It is well settled that "[t]he admissibility of evidence is a question addressed to the sound discretion of the trial justice and will not be disturbed on appeal absent a clear abuse of that discretion."

*State v. Barkmeyer*, 949 A.2d 984, 1005 (R.I.2008) (quoting *State v. Lynch*, 854 A.2d 1022, 1031 (R.I.2004)). "We give considerable latitude to a trial justice's rulings made during examination of witnesses at trial." *Id.* (quoting *State v. Gomez*, 848 A.2d 221, 237 (R.I.2004)). We will vacate a conviction because of evidentiary error only if we are satisfied that the trial justice abused his or her discretion and so prejudiced the defense case that a new trial must be ordered. *Id.* (citing *State v. Hallenbeck*, 878 A.2d 992, 1015 (R.I.2005)).

■■■ Further, the standard of review that this Court uses when reviewing jury instructions is well settled: the jury charge "need only 'adequately cover[ ] the law.' " *State v. Cardona*, 969 A.2d 667, 674 (R.I.2009) (quoting *State v. Krushnowski*, 773 A.2d 243, 246 (R.I.2001)). Jury instructions are reviewed "in their entirety to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them * * *." *Id.* (quoting *Krushnowski*, 773 A.2d at 246). We examine the challenged portions of the jury instructions "in the context in which they were rendered." *Id.* In instructing the jury, the trial justice is "bound to ensure that the jury charge 'sufficiently addresses the requested instructions and correctly states the applicable law.' " *State v. Sivo*, 925 A.2d 901, 913 (R.I.2007) (quoting *State v. Coleman*, 909 A.2d 929, 938 (R.I.2006)). However, "[a]n erroneous charge warrants reversal only if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." *Id.* (quoting *Saber v. Dan Angelone Chevrolet Inc.*, 811 A.2d 644, 653 (R.I.2002)).

■■■ The defendant argues that the trial justice committed reversible error when he permitted complainant to testify about the disparity in his height, weight, and age as compared to that of defendant; he also argues that the trial justice erred by instructing the jury that it could consider

such evidence in making its determination about whether Lynch had used force. The defendant argues that such evidence would be relevant only if the state had pursued the theory of psychological coercion of a vulnerable victim[8] or if complainant had resisted the assaults. The defendant contends that because M.G. offered *no* resistance, such testimony was irrelevant. The state responds that, by failing properly to object, this appellate argument is not preserved and that, even if we were to overlook this omission, the evidence was relevant to the extent that it helped the jury determine whether complainant's resistance was reasonable.

Regardless of whether this issue was properly preserved, we agree with the state that this evidence was relevant and properly admitted. As we discussed in this opinion, this Court has noted that "[a] variety of factors * * * such as *the comparative strength of the parties, the age and condition of the victim,* and the degree of force exhibited by the assailant[,]" are relevant when determining whether the complainant reasonably resisted the force exerted upon him by the defendant. *Carvalho,* 122 R.I. at 467, 409 A.2d at 136 (emphasis added); *see also Dinagen,* 639 A.2d at 1357. According deference to the trial justice's decision to admit this evidence, we are satisfied that he did not err. As part of his defense of consent, defendant interjected that complainant did not physically resist the encounters. Evidence about the disparate age and size of the individuals was helpful to the jury's determination on the issue of force and whether complainant's level of resistance was reasonable under the circumstances. *See* § 11–37–12; *Carvalho,* 122 R.I. at 467, 409 A.2d at 136.

We also conclude that the trial justice correctly and appropriately charged the jury about its use of this evidence. In his preliminary instructions, the trial justice noted that although the state was not required to prove complainant's age as an element of the crimes, M.G.'s age nonetheless was "a factor that, if proven and if accepted by the jury[,]" could be considered "in deciding [the] case at the appropriate time." The trial justice's final instruction explained that M.G.'s age at the time of the sexual assaults was relevant to the extent that the crimes were committed within the time frames set forth in the indictment. He also informed the jury that it could consider "the comparative strength of the parties, the condition of the alleged victim at the time of the acts alleged, and the degree of force," with respect to whether complainant's resistance was reasonable. Having examined the instructions in their entirety, we are of the opinion that a jury of ordinary intelligent lay people would have understood that they could consider the relative size and age as factors in order to determine whether complainant reasonably resisted the assaults.

### III

### Jury Instructions Concerning Consent Defense

As noted above, it is the function of this Court to review jury instructions "in their

---

8. In *State v. Burke,* 522 A.2d 725, 734–35 (R.I.1987), we delineated the theory of psychological coercion of a vulnerable victim when the unique facts of the case "show[ed] that [the] defendant, a uniformed police officer armed with handcuffs and a gun, used his position of authority to intimidate an alcoholic young woman into performing oral sex upon him." We declined to extend the *Burke* analysis to the facts of *State v. Jacques,* 536 A.2d 535, 538 (R.I.1988) (in which the defendant had posed as a photographer and took the complainant to a secluded area before sexually assaulting her) or to the facts of *State v. DiPetrillo,* 922 A.2d 124, 134–35 (R.I.2007) (in which the defendant was the complainant's employer). This theory was not argued by the state in this case.

entirety to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them," and review the challenged portions of the jury instructions "in the context in which they were rendered." *Cardona,* 969 A.2d at 674 (quoting *Krushnowski,* 773 A.2d at 246). "[A]n erroneous charge warrants reversal only if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." *Sivo,* 925 A.2d at 913 (quoting *Saber,* 811 A.2d at 653).

The defendant asserts that the trial justice erred when, during his charge to the jury, he stated that, "[i]n order to prove the [d]efendant guilty of first-degree sexual assault, the [s]tate must prove beyond a reasonable doubt that he, meaning Mr. Lynch, did not reasonably believe that the alleged victim consented to the sexual acts." Lynch argues that this instruction elevated "consent" to an element of first-degree sexual assault and that the jury erroneously could have found defendant guilty based on lack of consent. We deem this argument to be wholly without merit.

The defendant takes these few instructions out of context. It is the state's burden to prove lack of consent beyond a reasonable doubt. *See State v. Brigham,* 638 A.2d 1043, 1046 (R.I.1994); *State v. Pule,* 453 A.2d 1095, 1098 (R.I.1982). Immediately before introducing the defense of consent to the jury, the trial justice explained that "the [s]tate must show that [defendant's] sexual penetration was accomplished by force or coercion against the will of [complainant]." He then proceeded to instruct on force and resistance. We are of the opinion that the trial justice correctly instructed the jury. Consent was not an element of the crime for which defendant was charged, but a defense. Significantly, we equally are convinced that the jury could not have been misled into believing that it could convict defendant without finding the essential element of force or coercion.

## IV

### Testimony About Effect of Sexual Assaults on Complainant

"It is well settled that a decision to pass a case and declare a mistrial are matters left to the sound discretion of the trial justice." *Barkmeyer,* 949 A.2d at 1007 (quoting *State v. Suero,* 721 A.2d 426, 429 (R.I.1998)). The trial justice is in the best position to evaluate the effects of any prejudice on the jury, by virtue of his having a "front row seat" at the jury trial. *Id.* (citing *State v. Tempest,* 651 A.2d 1198, 1207 (R.I.1995)). Therefore, we accord great weight to the trial justice's ruling and we will not disturb it unless that ruling is clearly wrong. *Id.* (citing *State v. Mello,* 472 A.2d 302, 304 (R.I.1984)).

Toward the end of the state's direct examination of complainant, he was asked whether, after he left defendant's employment, he ever thought of the sexual assaults, and if so, how those memories affected his personal life. Over defendant's objection, complainant answered that he would "self-medicate with drinking, using different drugs, [and] marijuana[,]" and that he "had a hard time holding a job, staying focused, [and had] periods of depression." The defendant has argued that this testimony does not meet the basic relevancy requirements of the admissibility of evidence because "[t]he timeframe for the purported emotional injuries was so far removed from the alleged incidents that it was not a reliable basis upon which to determine whether the sexual assaults actually occurred."

Rule 401 of the Rhode Island Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make

the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We are satisfied that this testimony was relevant to explain why twenty years elapsed before complainant went to the police to report these assaults and therefore was probative on the crucial issue of complainant's credibility.

■ The complainant also was asked how these offenses affected his personal life. Before the trial justice could rule on defendant's objection, complainant answered, "[i]n regards to my relationship with my wife, ex-wife now, I was unable to have, I guess, what you would say a normal sex life." The trial justice sustained the objection and the testimony was stricken from the record. After defendant moved to pass the case, a sidebar ensued in which defendant argued that the state had violated Rule 16 because defendant never was notified that M.G. was going to testify "about his opinion or about his personal sexual life following 1992." The state disputed the suggestion that there was a discovery violation in this case, noting that defendant was given a transcript of the recorded telephone conversation between complainant and defendant that included complainant's statements about problems in his marriage. The trial justice denied defendant's motion to pass the case, finding that the state had not violated Rule 16.

■ On appeal, the defendant assigns error on grounds other than those raised at trial. He contends that, even though the trial justice sustained the defendant's objection and struck the answer, it was too late to "unring the bell" by presenting "highly emotionally-charged testimony that was sure to appeal to the jurors' sympathies" and prejudice the defendant, and therefore that the trial justice should have declared a mistrial. In ruling on a motion to pass a case, "the trial justice must determine whether the evidence would cause the jurors to be so inflamed as to make them unable to decide the case on the basis of the evidence presented." *State v. Shinn*, 786 A.2d 1069, 1072 (R.I. 2002) (quoting *State v. Luciano*, 739 A.2d 222, 228 (R.I.1999)). If the evidence is so inflammatory, we will require a mistrial only if the "cautionary instructions were untimely or ineffective." *Id.* (quoting *State v. Kholi*, 672 A.2d 429, 433 (R.I. 1996)). We fail to see how this one remark was so inflammatory or prejudicial that the jury would not have been able to decide the case on the evidence admitted at trial. Further, immediately after striking the testimony, the trial justice cautioned the jury to disregard it. We often have stated that we will presume that the jury was able to follow instructions from the trial justice. *State v. Patel*, 949 A.2d 401, 415 (R.I.2008) (citing *State v. La-Roche*, 683 A.2d 989, 1000 (R.I.1996)). Here, there is no suggestion that the jurors were unable to follow the instructions. The decision of the trial justice to deny the motion to pass the case was well within his sound discretion. *Barkmeyer*, 949 A.2d at 1007 (citing *Suero*, 721 A.2d at 429).

## Conclusion

For the reasons set forth in this opinion, the judgment of the Superior Court is affirmed. The papers in this case may be returned to the Superior Court.