**STATE**

v.

**Jose VIEIRA.**

**No. 2009–380–C.A.**

Supreme Court of Rhode Island.

March 7, 2012.

Virginia M. McGinn, Department of Attorney General, for State.

Janice M. Weisfeld, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

In August 2009, a jury found the defendant, Jose Vieira, guilty on five counts of second-degree child molestation, for which he was sentenced to concurrent terms of

twenty-five years on each count, with twelve and a half years to serve and twelve and a half years suspended, with probation. On appeal to this Court, the defendant argues that the trial justice committed reversible error when she (1) denied his motion to pass the case because of the prosecutor's remarks during final argument and (2) admitted hearsay testimony of the complainant's mother about statements the complainant made to her. For the reasons set forth in this opinion, we deny the appeal and affirm the judgment of conviction.

### Facts and Travel

It was not uncommon for eight-year-old Sherry[1] to be left in the care of her Aunt Karen and her aunt's boyfriend, defendant, while Sherry's mother worked. Sherry sometimes spent the night at Karen's apartment, and from time to time she was left alone with defendant. Karen and defendant had two daughters of their own, aged four and one, at the time of the incidents set forth in the indictment. Sherry said that she always had a good relationship with defendant, but that things changed after he began to touch her inappropriately.

Sherry complained that she had been sexually molested by defendant on five separate occasions at the apartment defendant shared with Karen. On each of those occasions, Sherry said, defendant approached her, reached underneath her clothing, and used his fingers to touch her on the inside of her vagina. Sherry said that the incidents lasted for a couple of minutes, after which defendant would say nothing and leave the room. She testified that on one occasion, after defendant touched her in the bathroom, he said "[d]on't tell anybody."

Sherry explained that she did not tell anyone about what was occurring because she was scared and thought something might happen to her and her mother if she revealed that she was being abused. But, after the fourth incident of molestation, Sherry revealed to a friend what had been happening. That friend encouraged Sherry to tell her aunt Karen, and she did. Soon thereafter, Karen confronted Sherry and defendant, at which time defendant denied the allegations. At trial, Sherry testified that after the confrontation, defendant approached her, asked why she told Karen, and said to her "you could have told me and I would have stopped."[2]

After Sherry told her mother, Lynn, that she no longer wished to go to defendant's home, a concerned Lynn met with Karen, who then disclosed Sherry's allegations to her. Lynn then asked Sherry what had been occurring at Karen's home, and Sherry told her mother that defendant had been touching her inappropriately. Lynn immediately called Sherry's godmother, a social worker. After consulting with Sherry's godmother, Lynn contacted the Rhode Island Department of Children, Youth and Families, and the Bristol police.

The police officer who spoke to Lynn testified that he did not take any statements from Sherry, but asked her generally if she had been "touched in inappropriate places" by defendant and that she said "[y]es." The officer further explained that according to department protocol, because Sherry answered in the affirmative, he stopped the conversation and brought in a female law enforcement advocate. Later,

---

1. In an effort to protect the privacy of the complainant, we will use a fictitious name for her. We likewise will use pseudonyms for other members of her family.

2. At trial Sherry testified that defendant molested her one more time after her initial disclosure.

Sherry was brought to the Child Advocacy Center, where young children involved in child molestation cases are interviewed.

On July 7, 2006, defendant was charged with five counts of first-degree child molestation involving the digital penetration of Sherry. At the conclusion of the trial, a jury found defendant guilty of five counts of second-degree child molestation.

## Standard of Review

 "It is well settled that a decision to pass a case and declare a mistrial are matters left to the sound discretion of the trial justice." *State v. Lynch,* 19 A.3d 51, 60 (R.I.2011) (quoting *State v. Barkmeyer,* 949 A.2d 984, 1007 (R.I.2008)). It is the trial justice who "is in the best position to evaluate the effects of any prejudice on the jury, by virtue of [her] having a 'front row seat' at the jury trial." *Id.* Therefore, "this Court will reverse the trial justice's ruling only if it was clearly wrong." *State v. Nelson,* 982 A.2d 602, 607 (R.I.2009) (citing *State v. Mendoza,* 889 A.2d 153, 158 (R.I.2005)). "[D]etermining the admissibility of evidence is squarely within the purview of the trial justice." *State v. Johnson,* 13 A.3d 1064, 1065–66 (R.I.2011). When we review the admission of evidence under the deferential standard of abuse of discretion, the "trial justice's ruling will be upheld unless abuse of discretion that prejudices the complaining party is shown." *State v. Brown,* 9 A.3d 1240, 1247 (R.I. 2010) (citing *State v. Flori,* 963 A.2d 932, 941 (R.I.2009)).

 However, this Court strictly "adheres to the 'raise or waive' rule, which requires parties to raise an issue first in the trial court before raising it on appeal." *State v. Figuereo,* 31 A.3d 1283, 1289 (R.I. 2011); *see DeMarco v. Travelers Insurance Co.,* 26 A.3d 585, 628 (R.I.2011); *State v. McManus,* 990 A.2d 1229, 1237 (R.I.2010) ("According to our well settled 'raise or waive' rule, if an issue was not preserved by specific objection at trial, then it may not be considered on appeal.") (citing *State v. Pacheco,* 763 A.2d 971, 976 (R.I.2001)). Also, we consistently have "held that if 'the introduction of evidence is objected to for a specific reason, other grounds for objection are waived and may not be raised for the first time on appeal.'" *In re Jazlyn P.,* 31 A.3d 1273, 1280–81 (R.I.2011) (quoting *State v. Ucero,* 450 A.2d 809, 815 (R.I.1982)); *see State v. Hallenbeck,* 878 A.2d 992, 1017–18 (R.I. 2005).

## Analysis

### A. Closing Argument

 The defendant argues that the trial justice erred when she refused to grant defendant's motion to pass the case after the prosecutor made "wholly improper remarks" to the jury during closing argument. He contends that no cautionary instruction could dispel the prejudice resulting from those inappropriate comments and that the only suitable remedy was to declare a mistrial.

Before trial, the trial justice had ruled on a number of pretrial motions, including defendant's motion *in limine* that sought to prevent Lynn from testifying about certain changes in Sherry's behavior and demeanor during the time of the alleged molestation. The trial justice ruled that Lynn would be allowed to "testify to any changes of [Sherry's] behavior * * * she's entitled to talk about physical changes she observed or other changes she observed with her daughter's behavior." However, the court explicitly precluded Sherry's mother from "draw[ing] any conclusions or mak[ing] any statements as a result of that." The court then also ruled *sua sponte* that the prosecutor would be prohibited from drawing "any conclusions during her argument."

At trial, evidence was adduced that during the time that the state alleged Sherry was being abused, she was reluctant to visit defendant's home, experienced nightmares, had trouble sleeping, and began bedwetting. When she made her closing argument, the prosecutor addressed that evidence, saying:

"Next was the testimony of her mother, [Lynn]. She told you about the way that [Sherry] was behaving during the six month period when we now know she was being molested by the defendant, that over that six-month period [Sherry] grew more and more reluctant about going over to the defendant's house, calling to come home, not wanting to go. She started to become withdrawn, angry and started wetting her bed. These are all signs of a troubled child. We know now why she was troubled. We know now what was going on. The defendant was molesting her. And that's why she was acting that way."

The defendant made a timely objection, and moved to pass the case. The trial justice agreed that the prosecutor had "cross[ed] the line" and went too far by using the word "troubled."[3] Nonetheless, when she responded, the trial justice denied the motion to pass, observing that although she "would have preferred her to use different language," she was unable to say it was "not accurate or correct." The trial justice noted that bedwetting was not normal behavior for an eight-year-old child, and that it was indeed a sign of trouble. Significantly, the trial justice ruled that the prosecutor's language was not so inflammatory that it could not be corrected, and she indicated that she would address the issue through a jury instruction because she "certainly [did] not think it [was] so prejudicial and damaging to this case that the matter is passed." When she instructed the jury on the role of closing arguments, the trial justice said:

"Let me tell you before I go any further what is not evidence in the case. * * * [T]he statements of counsel that I spoke to you [about] this morning or during the course of the trial are not evidence. * * * [You] heard two very passionate arguments from counsel this morning. What they say about the evidence is not the evidence. They both got up, one stated the complaining witness was lying. One said the complaining witness was telling the truth. That is your job to determine; not theirs. They have a right to their opinion, but it's your determination as to who told the truth in this courtroom, and draw from the facts and circumstances. They also made conclusions about what evidence and what inferences you can draw from that. Again, that is not their job. They have a right to present an argument, but the conclusions and inferences and what evidence means is for your determination; not theirs."

The defendant maintains that this case demands the same result as occurred in *State v. Burke*, 427 A.2d 1302, 1304 (R.I. 1981), in which we held that the admission of certain evidence "was so highly prejudicial that the instructions of the trial justice did not render the admission harmless." In that case, the defendant had been accused of driving to endanger, death resulting, and driving under the influence of

---

3. The state contends that the prosecutor merely made a correlation between the changes in Sherry's behavior that her mother had observed and the period within which the state had alleged the molestation was occurring. Prosecutors are "given considerable latitude in closing argument, as long as the statements pertain only to the evidence presented and represent reasonable inferences from the record." *State v. Fortes*, 922 A.2d 143, 150 (R.I.2007) (quoting *State v. Horton*, 871 A.2d 959, 965 (R.I.2005)).

liquor and drugs. *Id.* at 1302. During trial, evidence was presented that the defendant had marijuana in his possession at the time of the accident. *Id.* at 1303. Before submitting the case to the jury, the trial justice ruled that the jury could not consider the testimony about the presence of drugs because the charge had been amended to include only alcohol. *Id.* at 1303–04. Although the jury found the defendant guilty, we vacated the conviction, holding that the drug-related evidence "not only was irrelevant but could only cause confusion in the jurors' minds and divert their attention from relevant evidence." *Id.* at 1304.

In our opinion, *Burke* is not factually similar to the case at bar. Here, the prosecutor's comments, although straying into an area precluded by the trial justice, nonetheless were based on evidence that had been introduced properly at trial, and that evidence was neither irrelevant nor confusing. *See Burke*, 427 A.2d at 1304; *cf. State v. Gallagher*, 654 A.2d 1206, 1210–12 (R.I.1995) (holding mistrial should have been granted after evidence was admitted concerning the defendant's arrests on unrelated criminal allegations). Furthermore, the comments at issue were not "of a nature to 'inflame the jurors' passions' to preclude 'their calm and dispassionate evaluation of the evidence.'" *Nelson*, 982 A.2d at 610 (quoting *State v. Luciano*, 739 A.2d 222, 228 (R.I.1999)).

The defendant also finds support for his position in *State v. Ordway*, 619 A.2d 819 (R.I.1992). There, the defendant, on trial for murdering her husband, testified that she stabbed him in self-defense because her husband was an abusive drinker who subjected her to regular beatings. *Id.* at 820–21. During cross-examination, the prosecutor inquired about an abusive relationship the defendant had been in with another man and asked her whether she recalled having stabbed that man. *Id.* at 824–25. At that moment, the defense counsel immediately objected and moved for a mistrial based on what the trial justice characterized as "a question * * * fraught with * * * explosiveness." *Id.* at 825. Despite that analysis, the trial justice denied the defendant's motion for a mistrial. *Id.* at 826. This Court vacated the conviction, holding that "the question posed by the prosecutor had the result of inflaming the passions of the jurors to the point where they were unable to pass impartially upon the issues in this case." *Id.* at 828.

We are of the opinion that *Ordway* is dramatically distinguishable from the case at bar and therefore fails to support defendant's argument. The highly inflammatory question posed by the prosecutor in *Ordway* introduced extraneous information about matters not before the court and "planted the seeds of prejudice" against the defendant. *Ordway*, 619 A.2d at 825, 827. Again, that is not the case here.

Therefore, we disagree with defendant that the above cited cases are on point. It is first significant to note that the cases cited by defendant involve the admission of evidence of other acts for which the defendants in those cases were not on trial, but this case involves a prosecutor's closing argument, which is not evidence. *See Bleau v. Wall*, 808 A.2d 637, 643 (R.I. 2002).

In resolving this case, we have reviewed our holding in *State v. Boillard*, 789 A.2d 881 (R.I.2002). In that case, the defendant appealed convictions of first-degree and second-degree child molestation. *Id.* at 882. One of the young victims in that case testified that she had witnessed the defendant's daughter performing a sexual act on the defendant. *Id.* at 884. The victim also testified that when she asked the defendant's daughter about what she had seen, and whether it happened often, the daugh-

ter responded "only when I see my [d]ad." *Id.* At trial, the daughter testified for the defense and denied ever having sexual contact with her father. *Id.* During closing argument, the prosecutor suggested that the testimony of the defendant's daughter, in which she denied ever having been sexually abused by her father, may have been the result of "repressed" memories. *Id.* Defense counsel objected immediately, and curative instructions were given to the jury.[4] *Id.* at 886.

This Court held that the state's closing argument, providing possible explanations for the daughter's denial, "though conjectural, were within the array of reasonable inferences that could be drawn from the facts presented at trial * * *." *Boillard,* 789 A.2d at 886. Like the comments at issue in *Boillard,* the comments made by the prosecution in this case pertained only to evidence produced at trial and represented reasonable inferences that "were neither extraneous nor inflammatory." *Id.; accord Fortes,* 922 A.2d at 150.

In our opinion, the trial justice did not err when she ruled that any damage done by the prosecutor's errant remark could be cured by an appropriate curative instruction. Indeed, when she instructed the jury, the trial justice made it crystal clear that the jurors were not to consider closing arguments of counsel as evidence.[5]

Moreover, the fact that the jury found defendant not guilty of first-degree child molestation on each count suggests that the prosecutor's comment did not result in "inflaming the passions of the jurors to the point where they were unable to pass impartially upon the issues in this case." *Ordway,* 619 A.2d at 828. Furthermore, there was no objection to the substance of the jury instructions. Therefore, we conclude that the trial justice was not clearly wrong when she denied the motion to pass.

**B. The Testimony of Sherry's Mother**

■ In his argument before this Court, defendant asserts that the trial justice erred when she allowed Lynn to testify about certain statements Sherry had made to her. The defendant alleges that these statements constituted inadmissible hearsay, that they were extremely prejudicial in a case that was essentially one person's word against another's, and that the judgment of conviction should be vacated as a result.

One issue in the case concerned Sherry's delay in reporting the allegations against defendant. The defendant also argues that Sherry's testimony that he never threatened her or her mother, along with her failure to tell her father or anyone at school that she was being molested, all provided "grist for the jury's deliberative mill." The defendant asserts that Sherry's failure to tell someone sooner about the alleged molestation, coupled with the lack of physical evidence or witnesses, significantly undermined the state's case.

Therefore, defendant insists that Lynn should not have been allowed to testify about the reason Sherry gave her about why she had not disclosed the molestation sooner. At trial, Lynn testified that Sher-

---

4. Defense counsel objected twice during the prosecutor's summation, but was overruled each time by the trial justice. *State v. Boillard,* 789 A.2d 881, 884–85 (R.I.2002). Despite the failure to request a mistrial, this Court held that review was not precluded because previous objections had been summarily overruled. *See id.* at 883 (citing *State v. Mead,* 544 A.2d 1146, 1150 (R.I.1988)).

5. Also, before closing arguments, the trial justice instructed the jury that "[e]ach of the attorneys has an opportunity to speak to you and present their perspective on the evidence you have heard. As I told you at the beginning, and I'll tell you now, their statements are not evidence."

ry explained to her that she did not tell anyone earlier because her aunt had instructed her not to say anything, she believed that if she disclosed the molestation she no longer would be allowed to see her cousins, and because she was afraid her mother would be angry with her and not believe her. The following exchange took place between the prosecutor and Lynn, the complainant's mother:

"[PROSECUTOR]: You said you asked her why she hadn't told you prior to that day; is that right?

"[WITNESS]: Yes.

"[DEFENSE COUNSEL]: Objection. I don't think I asked that question.

"THE COURT: I think she testified she asked her based on your question.

"[DEFENSE COUNSEL]: Judge, I apologize. If that's true, I don't recall asking that question.

"THE COURT: She testified to it during your cross-examination.

"[DEFENSE COUNSEL]: She may have testified to it. I didn't ask the question.

"THE COURT: Objection is overruled."

In his argument, defendant contends that it was "clear from the context that defense counsel was objecting to the witness testifying to anything that the complainant said to her." However, it is obvious from our review of the testimony that there was a striking lack of clarity in the objection raised by defendant. Not only did counsel fail to specify that she was objecting on hearsay grounds, she failed as well to articulate any basis whatsoever for her objection. From the colloquy between counsel and the trial justice, it is plainly evident to us that the trial justice reasonably concluded that the basis for the objec-

tion was that the question on redirect was beyond the scope of cross-examination, and that she overruled the objection on that basis. At the point in time when the prosecutor asked Sherry's mother about why her daughter had not disclosed the abuse sooner, the only objection articulated by defendant's counsel was that she did not think she had "asked that question" on cross-examination. Defense counsel's objection was not " '*sufficiently focused*' " on the rule against hearsay, and we see no error by the trial justice. *See In re Jazlyn P.*, 31 A.3d at 1280.

"We have indicated that, 'in order to satisfy the strictures of our raise-or-waive rule, an evidentiary objection must be *sufficiently focused* so as to call the trial justice's attention to the basis for said objection * * *.' " *In re Jazlyn P.*, 31 A.3d at 1280 (quoting *State v. Diefenderfer*, 970 A.2d 12, 30 (R.I.2009)); *see also* Rule 103(a)(1) of the Rhode Island Rules of Evidence (explicitly requiring "a timely objection * * * stating the specific ground of objection, if the specific ground was not apparent from the context"). Therefore, we have no hesitation in holding that any objection based on hearsay was waived.

## Conclusion

For the reasons set forth in this opinion, the judgment of the Superior Court is affirmed. The papers in this case may be returned to the Superior Court.