**STATE**

v.

**Alberto HEREDIA.**

**No. 2007–127–C.A.**

Supreme Court of Rhode Island.

Dec. 13, 2010.

Jane M. McSoley, Department of Attorney General, for State.

Paula Rosin, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case is before the Supreme Court on appeal by Alberto Heredia (Heredia or defendant) from a judgment of conviction, after a jury trial, of second-degree murder.[1] Heredia contends that the evidence failed to establish beyond a reasonable

---

1. On February 6, 2004, Heredia and three other men—Manuel Texieira (Texieira), Eric Landry (Landry), and Jonas Chattelle (Chattelle)—were indicted for the murder of Ortega. Heredia was the first to stand trial, in June 2005, and he was convicted of second-degree murder. Landry pled guilty to involuntary manslaughter in September 2005, and he was sentenced to thirty years, with ten years to serve and the rest suspended. Texieira stood trial in February 2006, and he was convicted of first-degree murder and sentenced to life in prison. State v. Texieira, 944 A.2d 132, 137 (R.I.2008). After Texieira's trial, Chattelle pled guilty to misdemeanor manslaughter, and he was sentenced to twenty-five years, with three to serve and the rest suspended.

doubt that he was responsible for the death of Edgar Ortega (Ortega), either as a principal or as an aider and abettor, and that, as such, the trial court erred in denying his motions for judgment of acquittal and his motion for a new trial. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## Facts and Travel

Tempers were running high at the Keg Room in Providence in the early morning of August 31, 2003. Two men—Edgar Ortega and Jonas Chattelle—got into an altercation on the dance floor. What began with ominous glares and oral exchanges inside the Keg Room escalated into an all-out brawl outside the club, culminating in the tragic death of Ortega.

Shortly before closing, Ortega was dancing with a female friend in the "hip-hop" area of the Keg Room. During the last dance, a man later identified as Chattelle bumped into him. The two men began staring at each other; and, shortly after the dance concluded, Ortega approached Chattelle. The men began arguing until several bouncers intervened and restrained Ortega, who was forcibly escorted from the Keg Room.

Once outside, a full-fledged physical confrontation ensued. At first, only Chattelle and Ortega battled each other. Witnesses reported that Ortega, who was bigger than Chattelle, was trying to restrain him. As the crowd gathered, several of Chattelle's friends came to his aid, including Heredia. Although defendant initially was a bystander, yelling profanities and cheering, he soon joined the melee. Witnesses reported seeing Heredia repeatedly kicking and punching Ortega. The fight became a free-for-all, with several participants attacking Ortega at the same time—he repeatedly was kicked in the face and torso and was struck on the head with a bottle.

The fight eventually was broken up by the police and several bystanders. Ortega, who had a cut lip and appeared dazed and disoriented, was able to get up with the help of his friend, Victor Alonzo (Alonzo). As the two walked to Ortega's car, they intentionally took an indirect route to avoid any further confrontations. However, as they approached the corner of Friendship and Richmond Streets, Ortega and Alonzo were ambushed by Heredia, Chattelle, Texieira, and others.

This second altercation was a horrific scene: three or four men kicked and punched Ortega simultaneously, some with running starts to increase the force of their blows. After one last kick to the head, that was inflicted by codefendant Texieira, Ortega collapsed on the ground. The police found Ortega unconscious, and he was pronounced dead shortly after arriving at the hospital.

At defendant's trial in June 2005, the jury heard extensive testimony from Dr. Dorota Latuszynski (Dr. Latuszynski), the medical examiner who performed an autopsy on Ortega's body. According to Dr. Latuszynski, external examination noted numerous contusions and abrasions on Ortega's head, neck, shoulders, arms, and knees. On internal examination, Dr. Latuszynski found multiple hemorrhages in the subarachnoid and subdural areas of the brain. Additionally, Ortega's brain was swollen, causing "hypoxic ischemia"—*i.e.*, a decrease of oxygen and blood flow to the brain.

Doctor Latuszynski ultimately concluded that Ortega's death was caused by blunt-force trauma to his head. She defined blunt-force trauma as "injury inflicted by an object that is blunt, blunt meaning not sharp and, thus, not being able to make cuts like one would expect * * * to make with [a] blade or with [a] knife." When asked whether Ortega's death was caused

by a single blow, or multiple traumas, Dr. Latuszynski testified that there were multiple injuries and evidence of multiple blows to the decedent's body. Specifically, Dr. Latuszynski stated that "either all of [the blows], some of them or one in particular which I cannot specifically point out may have resulted in this outcome." She further testified that the blunt-force trauma experienced by Ortega would be consistent with either punches or kicks to his head.

After seven days of trial and less than a day of deliberations, the jury found defendant guilty of second-degree murder. The defendant's motion for a new trial was denied on July 8, 2005, and he was sentenced on August 24, 2005. Heredia filed a timely notice of appeal, contending the trial justice committed error in denying his motions for judgment of acquittal and his motion for new trial.

## Standard of Review

■ A motion for a judgment of acquittal should be granted only if the evidence, viewed in the light most favorable to the prosecution, is insufficient to establish the defendant's guilt beyond a reasonable doubt. *State v. Rodriguez,* 996 A.2d 145, 148–49 (R.I.2010). In reviewing a trial justice's denial of such a motion, this Court applies the same standard: "we 'must view the evidence in the light most favorable to the state, * * * giving full credibility to the state's witnesses, and draw therefrom all reasonable inferences consistent with guilt.'" *Id.* at 148 (quoting *State v. Ros,* 973 A.2d 1148, 1159 (R.I.2009)). If the evidence so construed "is insufficient to establish the defendant's guilt beyond a reasonable doubt, a motion for judgment of acquittal should be granted." *State v. Texieira,* 944 A.2d 132, 140 (R.I.2008). "If, however, a reasonable juror could find the defendant guilty beyond a reasonable doubt, the motion should be denied." *Id.*

■ When ruling on a motion for a new trial, the trial justice acts as a thirteenth juror, exercising "independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Imbruglia,* 913 A.2d 1022, 1028 (R.I.2007) (quoting *State v. Banach,* 648 A.2d 1363, 1367 (R.I. 1994)). Specifically, "the trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." *Texieira,* 944 A.2d at 140 (quoting *State v. Morales,* 895 A.2d 114, 121 (R.I. 2006)). If, after conducting such a review, the trial justice reaches the same conclusion as the jury, the verdict should be affirmed and the motion for a new trial denied. *State v. Snow,* 670 A.2d 239, 244 (R.I.1996).

■ If the trial justice has complied with this procedure, articulated adequate reasons for denying the motion, and has not overlooked or misconceived material evidence, or committed clear error, his or her decision will be accorded great weight by this Court and left undisturbed. *State v. Horton,* 871 A.2d 959, 967 (R.I.2005).

## Analysis

### I

### Motions for a Judgment of Acquittal

■ The record discloses that defense counsel moved for a judgment of acquittal at the close of the state's case, and again at the close of the evidence. The trial justice denied both motions.

■ The jury heard extensive testimony from Dr. Latuszynski that any one of the numerous blows to Ortega's head could have caused his death. Although she was not able to pinpoint the precise fatal blow,

there was more than sufficient evidence to establish that defendant was an active and willing participant in the attack and was responsible for inflicting several traumatic blows. "In assessing criminal liability for some harm, it is not necessary that the party convicted of a crime be the sole cause of that harm, only that he be a contributory cause that was a substantial factor in producing the harm." *Texieira,* 944 A.2d at 141 (quoting *People v. Bailey,* 451 Mich. 657, 549 N.W.2d 325, 334 (1996)). Substantial evidence was presented at trial establishing that Heredia's assaults, at a minimum, could be a substantial factor in producing Ortega's death. As such, we are of the opinion that the trial justice did not err in denying defendant's motions for a judgment of acquittal.

## II

### Motion for a New Trial

■ When ruling on a motion for a new trial, the trial justice acts as the legendary thirteenth juror, independently passing upon the credibility of witnesses and the weight of the evidence. *Imbruglia,* 913 A.2d at 1028. At trial, the justice instructed the jury on the elements of first-degree murder, second-degree murder, manslaughter, and involuntary manslaughter. The jury found sufficient evidence to convict defendant of second-degree murder, and the trial justice agreed with this verdict. In her decision denying defendant's motion for a new trial, the trial justice found:

"[T]here was a conscious intent or design to kill although the evidence may not support a finding that it existed more than momentarily or fleetingly before [d]efendant and his friends committed the fatal act. The [s]tate proved malice beyond a reasonable doubt.

"The jury was justified in inferring malice from the attending circumstances surrounding [d]efendant's conduct and from the very nature of the killing itself. * * * The jury was justified in determining that there was a formation of malice, however brief, and that [d]efendant was guilty of second[-]degree murder rather than manslaughter."

The defendant argues that the trial justice erred in denying his motion for a new trial because the evidence was not legally sufficient to support the jury's verdict. Specifically, defendant contends that the state must prove that he inflicted the precise blow that caused Ortega's death. According to defendant, the state could not establish that the fatal wound was inflicted by him as opposed to one of his cohorts. As such, defendant argues, there was insufficient evidence to establish his guilt beyond a reasonable doubt.

The defendant's argument is misplaced. The trial justice found:

"The credible evidence suggests that Ortega suffered no serious injury in his 'one on one' fight with Chattelle. Additionally, the evidence further suggests that Ortega may have been dazed as a result of being struck by a bottle, but he was not fatally injured by the bottle nor was he fatally injured solely as a result of the first fight."

Moreover, as we stated in *Texieira,* 944 A.2d at 141, to convict the defendant, it was not necessary to prove that he dealt the fatal blow. Even if defendant's wrongful act—in this case, multiple punches and kicks—was only a partial cause accelerating death, he nevertheless is guilty. *Id.* (citing *Holsemback v. State,* 443 So.2d 1371, 1382 (Ala.Crim.App.1983)).

The record clearly established that defendant was an active participant in both fights. Despite the efforts of Ortega's friends to prevent bystanders from joining in the fray, defendant yelled: "it's not

going to be a fair fight, that's my boy, I'm not going to let that happen." The defendant pushed aside those trying to hold him back and joined the fight. Later, at the corner of Richmond and Friendship Streets, defendant was part of the brutal ambush that resulted in Ortega's death. Witnesses testified that defendant kicked and punched Ortega until blood was pouring out of his mouth. As the trial justice properly determined: "The [d]efendant willfully, not accidentally, kicked and punched Ortega. He did so knowing that Ortega had been injured, knowing that he was on the ground, and knowing that others were joining [d]efendant in the attack. They kicked and punched a helpless, injured man."

In a written decision denying Heredia's motion for a new trial, the trial justice set forth the appropriate standard of review, passed upon the credibility of witnesses, and weighed all the evidence. Her decision neither overlooked nor misconceived material evidence and, we conclude, was not erroneous. As such, we agree with the trial justice that "[t]he jury was justified in inferring malice from the attending circumstances surrounding [the] [d]efendant's conduct and from the very nature of the killing itself. * * * The jury was justified in determining that * * * [the] [d]efendant was guilty of second[-]degree murder rather than manslaughter."

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers in the case may be remanded to the Superior Court.