**Supreme Court**

No. 2014-51-C.A.

(K1/12-115A)

| | |
|---|---|
| State | : |
| v. | : |
| Jack Gregson. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|           |   |
|-----------|---|
| State     | : |
| v.        | : |
| Jack Gregson. | : |

Present:  Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on April 1, 2015, on appeal of the defendant, Jack Gregson (defendant).  Following a jury trial in the Superior Court, the defendant was convicted of one count of first-degree sexual assault; one count of second-degree sexual assault; two counts of assault with intent to commit second-degree sexual assault; and two counts of indecent solicitation of a minor.[1]  On appeal, the defendant contends that the trial justice committed two errors of law that require this Court to vacate those convictions:  (1) the denial of the defendant's motion for a bill of particulars; and (2) the denial of the defendant's motion for a new trial.  For the reasons set forth below, we are of the opinion that the trial justice did not err, and we affirm.

---

[1] The defendant initially was charged with one count of first-degree sexual assault (count one); three counts of second-degree sexual assault (counts two, three, and four); and two counts of indecent solicitation of a minor (counts five and six).  However, prior to trial, the trial justice granted the state's motion to amend counts three and four to the lesser included offense of assault with intent to commit second-degree sexual assault.  The defendant acceded to this request.

- 1 -

**Facts and Travel**

The testimony at trial disclosed the following facts. In the summer of 2011, fifteen-year-old Grace[2] resided with her mother and little brother in Warwick, Rhode Island. Grace is the granddaughter of defendant. During that summer, defendant saw Grace approximately three times a week, and he was close to her—buying her food, giving her rides, and talking with her. Grace began to confide in defendant about "[d]rama, boyfriend problems, [and] home issues."

The relationship changed, however, and Grace became uncomfortable when defendant started asking her questions about her "G-spot" and whether she had yet to experience an orgasm. Grace testified that, in late September 2011, while defendant was spending a week at Grace's home because her mother was hospitalized, defendant gave her an alcoholic beverage, which made her so sleepy that she went to bed. She testified that the next thing she remembered is waking up to someone moving her leg, rolling her onto her back, and taking her underwear off. She testified that she felt someone's tongue moving around in her vaginal area. Grace then stated that she opened her eyes and saw her grandfather, shirtless. She testified that she felt confused and scared. Then, as defendant began to touch her breasts, she moved back into the position she had been in, prior to being violated, and defendant "got up and walked away." Grace testified that, before leaving her room, defendant stated: "I was trying to teach you something."

"Upset[, s]cared[, and c]onfused[,]" Grace testified that she called her friend, Ryan,[3] and climbed out of her bedroom window and spent the night with him. Grace testified that she did not tell anyone in her family about what happened because she "didn't want to tear [her] family apart and [she] was confused."

---

[2] In order to protect the child's privacy, she has been given a pseudonym.

[3] In order to protect this child's privacy, he has also been given a pseudonym.

In October 2011, defendant persuaded Grace to accompany him to a liquor store. Grace testified that, during that encounter, defendant propositioned her, stating "that he would pay [her] $100 if [she] would let him perform oral sex on [her]." She testified that she refused. The defendant then went into the liquor store and returned with vodka and cranberry juice, a drink that Grace admitted she enjoyed. The defendant then drove Grace to Oakland Beach, where defendant poured Grace two drinks of vodka and cranberry juice. Grace testified that, after consuming the drinks, she felt "dizzy" and "unbalanced."

After leaving Oakland Beach, defendant expressed his sexual interest in Grace's thirteen-year-old cousin. Next, Grace testified that defendant then parked the vehicle and put his hand over her clothes on her vaginal area, to which she responded by smacking his hand away. However, defendant was persistent, and he tried to touch her vaginal area again, this time placing his hand underneath the lace of her pants. Grace testified that she again hit his hand away. She stated that she felt scared and "didn't want him touching [her]." Grace did not immediately report these incidents to anyone; and, when asked at trial why she had not told anyone, Grace replied: "I was scared. I didn't want to tear my family apart. I was very confused."

Next, Grace testified about another incident that occurred only a few days later. On October 14, 2011, she contacted her grandfather and asked him to pick her up at the bus stop because it was raining, and she wanted to get pizza. The defendant responded to Grace's request with a text message asking, "[w]hat do I get to eat?"[4] Grace responded, "[p]izza." The defendant again messaged Grace and said, "[y]ou know what." To which Grace replied, "[u]m, what? You make no sense." The defendant responded, "[i]t's low, bald, and has no hair." Grace testified that her vagina was hairless at the time and that she believed he was talking about

---

[4] The text messages were recovered by the Warwick Police Department and admitted into evidence.

her vagina.

The defendant proceeded to text Grace again, this time stating, "[w]e should get [your younger cousin]." Grace testified that this text message made her "[w]orried" because she "thought he was going to try to do what he did to [her] to [her] cousin." That day she asked defendant to drop her at her cousin's home, and she proceeded to tell her family about what her grandfather had done to her. The police were called, and defendant subsequently was arrested.

The defendant was charged by grand jury indictment with one count of first-degree sexual assault, three counts of second-degree sexual assault, and two counts of indecent solicitation of a minor. Prior to trial, two of the second-degree sexual assault counts were amended to the lesser included offense of assault with intent to commit second-degree sexual assault. The jury convicted defendant of all counts.

On appeal, defendant contends that the trial justice erred in denying a motion for a bill of particulars and also erred in denying defendant's motion for a new trial. We address each argument in turn.

## Analysis

### Motion for Bill of Particulars

Prior to trial, defense counsel moved for a bill of particulars pursuant to Rule 7(f) of the Superior Court Rules of Criminal Procedure.[5] Defense counsel asserted that, with respect to the count of first-degree sexual assault and second-degree sexual assault,

> "[t]he State could either prove that the accused * * * knows or has reason to know that the complaining witness is mentally incapacitated, mentally disabled, or physically helpless. * * * Or

---

[5] The record disclosed that defense counsel filed two motions for bills of particulars in this case, and the state filed one response. However, at a hearing before the trial justice, defense counsel withdrew his first motion. Therefore, the motion filed on October 21, 2013, the second bill of particulars, is the motion properly before this Court.

- 4 -

the State could prove that the accused used force or coercion; or the State could prove that the accused, through concealment or by element of surprise, is able to overcome the complaining witness * * *.

"[The State's] response to my motion for bill of particulars * * * [is that] the victim was physically helpless and/or through the use of force or coercion."

"[The defendant] is not on notice as to what elements the State intends to prove. If the State intends to prove that the complaining witness was physically helpless, I certainly could prepare a cross-examination of the complaining witness knowing that is what the State intends to prove. Conversely, if the State intends to prove force or coercion, I could prepare a cross-examination anticipating being on notice that is the element that the State intends to prove."

In response, the state submitted an answer to defense counsel's motion for a second bill of particulars and asserted that defendant was on notice that the prosecution would present evidence establishing that defendant had reason to know that Grace was physically helpless and that defendant used force or coercion in accomplishing the charged offenses. The state contended that, consistent with Rhode Island law, because the facts support both theories, it could present evidence to the jury on both theories, and the jury, making the ultimate determination, "could be unanimous on both or one and not the other." The trial justice denied defendant's motion for a bill of particulars, stating that he "disagree[d] with defense counsel's contention that the State[,] in terms of the charge[,] needs to pick under which element [of the offense]" defendant acted. Significantly, the trial justice charged the jury on only one of the state's theories—that Grace was physically helpless. The trial justice did not charge the jury on the element of force or coercion.

Before this Court, defendant argues that the trial justice committed reversible error when he denied defendant's motion for a bill of particulars because defendant was forced to defend without adequate notice of the charges. We disagree.

- 5 -

"[T]he function of a bill of particulars is to apprise a defendant of the evidentiary details establishing the facts of the offense when such facts have not been included in the indictment or information." State v. Rivera, 987 A.2d 887, 904 (R.I. 2010) (quoting State v. LaChapelle, 638 A.2d 525, 527 (R.I. 1994)); see also Wayne R. LaFave et al., 5 Criminal Procedure § 19.4(a) (3d ed. 2014). "The primary purpose of the bill is to avoid prejudicial surprise at trial." LaChapelle, 638 A.2d at 527; see also State v. Saluter, 715 A.2d 1250, 1253 (R.I. 1998). It is incumbent upon the trial justice to carefully instruct the jury consistent with the bill of particulars. See Rivera, 987 A.2d at 904.

This Court has stated that "the granting of a bill of particulars in any civil or criminal proceeding is within the discretion of the justice who hears the motion and his discretion will not be disturbed unless it appears that there has been an abuse of discretion." Union Mortgage Co. v. Rocheleau, 51 R.I. 345, 348, 154 A. 658, 660 (1931).

"Rule 16 [of the Superior Court Rules of Criminal Procedure] and its mandate for extensive disclosure of evidence for use at trial, '[is] designed to be broad in scope so that neither the defense nor the prosecution is surprised at trial.'" State v. Oster, 922 A.2d 151, 163 (R.I. 2007) (quoting State v. Powers, 526 A.2d 489, 491 (R.I. 1987)). This Court has noted, however, that the Rule 16 disclosure requirements are not to "be employed as a procedural device for the later exclusion of material evidence." Id. The same observation applies to a bill of particulars.

In the case before us, we are of the opinion that the trial justice did not err in refusing to order the state to provide another bill of particulars. The elements of first-degree sexual assault, under G.L. 1956 § 11-37-2 and second-degree sexual assault, under § 11-37-4 are not, as defense counsel suggested, mutually exclusive. The state provided defendant with adequate notice that it intended to proceed under both theories—that Grace was physically helpless and that defendant

used force or coercion when he assaulted her. The state was not under a duty to elect, prior to trial, which theory it would pursue. See State v. Waite, 484 A.2d 887, 890 (R.I. 1984) (noting that "[t]he technical precision of the common law rule of criminal pleading that required that a complaint set forth specifically everything that was necessary for the government to prove to establish the offense charged is no longer required"). Additionally, we have stated that "because the state bears the burden of proving each element of the charge beyond a reasonable doubt, it has the right to present evidence establishing those elements in its case in chief." State v. Marmolejos, 990 A.2d 848, 852 (R.I. 2010). Accordingly, the trial justice did not abuse his discretion in denying defendant's motion for a bill of particulars.

We pause to note that defense counsel also contends on appeal that the trial justice erred when he failed to specifically instruct the jury on which element it must find guilt beyond a reasonable doubt. After a thorough examination of the record, it is apparent that defendant failed to preserve this issue for appellate review. Prior to charging the jury, the trial justice indicated that both defense counsel and the prosecutor could submit any proposed jury instructions or verdict forms for consideration. As noted, the trial justice instructed the jury that, in order to return a verdict of guilty on the charge of first-degree sexual assault, they must find beyond a reasonable doubt that Grace was physically helpless. The trial justice then called both counsel to sidebar and asked if they had any objections to the court's instructions. The state had no objections, but defense counsel requested to "go off the record," and an unrecorded discussion ensued. The trial justice then summarized what had been discussed and provided an additional instruction to the jury, to which defense counsel had no objection.[6] Therefore, in accordance

---

[6] The additional instruction stated the following:
>   "Members of the jury, when I went through these [jury instructions], as I said, you will have a copy of this with you. I want to make sure I clarify a couple

- 7 -

with this Court's "raise-or-waive" rule, we deem defendant's argument waived. See Berard v. HCP, Inc., 64 A.3d 1215, 1219 n.2 (R.I. 2013) (noting that the Court "shall 'not review issues that were not presented to the trial court in such a posture as to alert the trial justice to the question being raised[.]'" quoting State v. Kluth, 46 A.3d 867, 876 (R.I. 2012)). Accordingly, we discern no error by the trial justice.

## Motion for a New Trial

Next, defendant contends that the trial justice erred when he denied defendant's motion for a new trial. "When ruling on a motion for a new trial, the trial justice acts as a thirteenth juror, exercising 'independent judgment on the credibility of witnesses and on the weight of the evidence.'" State v. Matthews, 88 A.3d 375, 387 (R.I. 2014) (quoting State v. Heredia, 10 A.3d 443, 446 (R.I. 2010)). "Specifically, 'the trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury.'" Id. at 387-88 (quoting Heredia, 10 A.3d at 446). "If, after conducting such a review, the trial justice reaches the same conclusion as the jury, the verdict should be affirmed and the motion for a new trial denied." Id. at 388 (quoting Heredia, 10 A.3d at 446). "Only when the trial justice does not agree with the jury's verdict must he or she consider

---

of things. As you heard when I was going through the elements of some of the different crimes charged, including the first degree. I had gone through and it's written in there exactly what the statute says. It deals with medical professionals. It deals with something called force and coercion. It deals with helplessness. * * * Just make sure and it's laid out in here you concentrate on not only on the wording of the statute says but specifically what the State alleges they can prove. That's what you're looking at * * *."

The trial justice also instructed the jury that his use of the word "victim" should have been "complaining witness." Lastly, the trial justice corrected a misstatement where he said "consent" instead of "intent."

whether reasonable minds could differ as to the outcome." Id. (citing State v. LaPierre, 57 A.3d 305, 310 (R.I. 2012)). "[W]hen 'the trial justice has articulated a sufficient rationale for denying a motion for a new trial, the decision will be given great weight' and we will disturb it only if the trial justice 'has overlooked or misconceived material evidence relating to a critical issue or if the justice was otherwise clearly wrong.'" Id. (quoting State v. Ferreira, 21 A.3d 355, 365 (R.I. 2011)).

In this case, the trial justice set forth his reasons for denying defendant's motion for a new trial. Specifically, the trial justice determined that "there was substantial credible evidence * * * that the State met its burden beyond a reasonable doubt to convict [defendant] of these charges." He noted that there was sufficient evidence presented for a jury to reject defense counsel's contention that Grace consented to defendant's conduct. Further, the trial justice articulated on the record evidence presented at trial that supported the jury's verdict, noting that defendant "stooped to the point of offering [his granddaughter] money for sexual contact, getting her drunk and reaching down her pants, and * * * probably most egregious in this trial, is as she slept [he] stuck his tongue in her vagina." Ultimately, the trial justice found "that there was sufficient evidence before this jury to form the basis for a conviction on each of the counts * * *." Therefore, the trial justice did not overlook or misconceive material evidence relating to a critical issue in this case.

Accordingly, we discern no error by the trial justice in denying defendant's motion for a new trial.

### Clerical Error

Finally, our thorough review of the record before us reveals that the final judgment entered in this case failed to reflect the amendments of counts three and four from second-degree

sexual assault to assault with intent to commit second-degree sexual assault. Rule 36 of the Superior Court Rules of Criminal Procedure concerning clerical mistakes in judgments provides that, "while [an] appeal is pending[, clerical mistakes in judgments] may be so corrected with leave of the Supreme Court." Accordingly, included in our remand order we direct that final judgment in this case be corrected to reflect the amended two counts.[7]

## Conclusion

The defendant's appeal is denied and dismissed, and the judgment of convictions is affirmed. We remand this case to the Superior Court with directions to correct the final judgment to reflect the amended counts in the indictment. The papers may be returned to the Superior Court.

Justice Indeglia did not participate.

---

[7] The state did not object to the Court remanding this case for the limited purpose of correcting the final judgment.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        State v. Jack Gregson.

**CASE NO:**        No. 2014-51-C.A.
                                   (K1/12-115A)

**COURT:**        Supreme Court

**DATE OPINION FILED:**   April 27, 2015

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

**WRITTEN BY:**        Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**   Kent County Superior Court

**JUDGE FROM LOWER COURT**:

                                   Associate Justice Brian P. Stern

**ATTORNEYS ON APPEAL:**

                                   For State:  Virginia McGinn
                                                    Department of Attorney General

                                   For Defendant:  Richard K. Corley, Esq.