February 19, 2020

**Supreme Court**

No. 2019-15-C.A.
(P1/15-4108A)

State                    :

v.                      :

Ricardo Franco.          :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                              :

          v.                       :

Ricardo Franco.                    :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  After a trial in Providence County Superior Court, a jury found the defendant, Ricardo Franco (defendant), guilty of three counts of first-degree child molestation sexual assault, in violation of G.L. 1956 §§ 11-37-8.1 and 11-37-8.2.  On appeal, the defendant contends that the trial justice erred in failing to grant a mistrial or to strike the complaining witness's unexpected testimony and that the trial justice compounded the error by instructing the jury to disregard a portion of the complaining witness's testimony.  The defendant additionally argues that the trial justice erred in denying his motion for a new trial.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

On January 4, 2016, defendant was indicted on three counts of first-degree child molestation sexual assault.  At the trial conducted over five days in April and May 2018, the complaining witness testified as to events that allegedly took place between February 18, 2014, and June 2014.  According to the complaining witness, defendant, whom she referred to as an uncle, sexually assaulted her by penetrating her vagina with his penis on about thirty separate

occasions; she specifically recounted three of the alleged incidents. Her testimony included graphic details of assaults inflicted upon her by defendant following defendant's discovery that she had a boyfriend and defendant's alleged statement that he "wasn't going to allow [her] boyfriend to be the first person to be with [her]." The pertinent facts of the case are as follows.[1]

The complaining witness testified first.[2] In November 2013, she moved to defendant's home in Central Falls, where her father was already living along with defendant, defendant's wife, and their infant child.[3] She testified that her father, like her, had immigrated from Guatemala and that he worked every night from 9 p.m. until 6 a.m. According to the complaining witness, the first two incidents of sexual molestation occurred after her father had gone to work for the night. She testified that, although defendant's wife and infant child were home, the incidents took place in their small apartment while defendant's wife was bathing their infant child, as indicated by the sound of running water. She testified that defendant stopped the assaults when the faucet was turned off. She further testified that she was afraid to speak up during and after the alleged assaults, because defendant threatened to have her father deported if she were to yell or scream out.

The third incident, according to the complaining witness, occurred after she and her father moved out of defendant's house; she testified that defendant picked her up while she was walking home from school and took her back to his apartment, where the alleged assault occurred with only the infant child at home. The defendant then dropped her off a block from

---

[1] For purpose of this opinion, a precise recitation of the sordid details of the acts allegedly committed by defendant is not necessary. Although there was significant testimony from the complaining witness as to the incidents that allegedly occurred, we do not deem it necessary to delve into the details.

[2] The complaining witness testified that the alleged events occurred when she was between twelve and thirteen years of age.

[3] The complaining witness testified that defendant was her uncle; however, he is in fact her father's cousin, whom she refers to as an uncle.

her house, in order to avoid suspicion. Again, although her parents were home when she was dropped off by defendant, the complaining witness did not tell them what occurred "because they might do something, report him, and then he might do something to my parents and have them deported because they were both here now."

The complaining witness testified that, after she moved out of defendant's home with her parents, defendant had purchased a cell phone for her and sent her text messages on it, and she also stated that she would destroy the SIM cards and not respond to his messages. The text messages and cell phone were not offered into evidence.

The complaining witness also testified that she told her by then ex-boyfriend about the first alleged incident; however, she broke up with him shortly after because, according to her, defendant threatened to kill him. After being asked if she had told anyone else, the complaining witness testified, to the surprise of both the state and defense counsel, that she had disclosed the alleged assaults to a classmate. The testimony and the resulting objection were as follows:

> "[PROSECUTOR:] Did you ever tell anyone else about what happened to you?
>
> "[COMPLAINING WITNESS:] No.
>
> "[PROSECUTOR:] At some point you did tell someone though; correct?
>
> "[COMPLAINING WITNESS:] Yes.
>
> "[PROSECUTOR:] And who did you tell?
>
> "[COMPLAINING WITNESS:] One of my classmates, but she didn't believe me.
>
> "[DEFENSE COUNSEL]: Objection. May I be heard at sidebar, your Honor?
>
> "THE COURT: Okay."

- 3 -

The trial justice and the attorneys then went to the sidebar, where the following conversation occurred:

"THE COURT: Before I rule, I want to make sure we're * * * on the same page.

"[DEFENSE COUNSEL]: First and foremost, it's a Rule 16 violation. We never had any sort of information, even hinting, that she told anyone other than [her former boyfriend]. And the prosecutor tied [*sic*] to elicit that information so she knew that was coming. As far as that goes, it's an unfair surprise. We could have contacted that person and tried to talk to them and got other information. So I would ask for a mistrial. If that is not granted, we ask that it be stricken.

"[PROSECUTOR]: Judge, I never heard this either. I was trying to get her to talk about when she disclosed to her parents. If you want to look at my questions, I never knew she disclosed to anyone else.

"THE COURT: Before I rule on the objection, do you want to move for a mistrial?

"[DEFENSE COUNSEL]: Yes, your Honor.

"THE COURT: Okay. It's denied. The prosecutor placed on the record she did not have knowledge of that. The Court will allow the statement that she told. As far as the response or how the person felt, the Court is going to sustain that objection as not only hearsay but also speculative and will instruct the jury to disregard.

"[DEFENSE COUNSEL]: Your Honor, if she continues to make any further statement about that, I would ask for a voir dire on that of who the person is.

"THE COURT: Okay.

"[PROSECUTOR]: My next question was moving on to October.

"THE COURT: Okay. Denied."

The sidebar concluded, and the trial justice immediately addressed the jury:

"There was an objection on the last question. The jury can consider as evidence the testimony of this witness told [*sic*] one of

- 4 -

her classmates something, but the Court will sustain and instruct the jury to disregard what her feeling was or what the reaction was of this classmate."

The complaining witness then testified in October 2015 that she finally told her parents about defendant's actions after they discovered a belly-button piercing that she had undergone. She testified that her father also found her attempting to cut her hands with cutting blades. She further testified that when her father asked, in the presence of her mother, why she was doing that, she "couldn't take it anymore and * * * told him everything that was happening." According to the complaining witness, her parents then brought her to the police station, where she gave a statement to a detective. She testified that she was examined two weeks later at a children's hospital. She additionally testified that her extended family in Guatemala did not believe her and that the people at the church she attended, where both her family and defendant's family were members, were not supportive of her.

The complaining witness's father, who also testified at trial, confirmed that defendant had given his daughter a phone, without her father's knowledge, and that, when he confronted defendant, defendant told him that "he found it. Somebody had dropped it in the park." The complaining witness's father additionally testified that he found that to be "suspicious" because defendant had also been giving the complaining witness gifts, including expensive shoes and clothing, that were "not appropriate."

After the complaining witness and her father testified, each party called an expert witness. The witness for the state, Christine Barron, M.D., was qualified as an expert in child-abuse pediatrics. Doctor Barron testified that she was an attending physician at the Aubin Center at Hasbro Children's Hospital, a program that performs complete medical evaluations for all forms of child maltreatment. The doctor testified that she evaluated the complaining witness,

noted healed linear marks on her forearms consistent with self-inflicted cuts, and performed a genital and anal exam. According to Dr. Barron, the complaining witness's genital exam was normal, meaning that there was no damage or injury visible on the tissue examined, including on the hymen tissue. She testified that "a normal exam neither rules out or confirms the possibility of sexual abuse or prior penetration and that is based upon my education, training, experience, and review of the literature where 90 to 95 percent of patients will have a normal exam despite having been sexually abused including vaginal penetration" and that "the number of penetrations does not change the findings and the diagnosis." In testifying, she indicated that studies and peer-reviewed work supported her opinion, including a paper published in a lead peer-reviewed journal for the field of pediatrics, in which the author "followed and examined 36 adolescents who were pregnant and that of those patients only two of them had a finding on exam of an injury to the hymen." She ultimately testified that, based on her evaluation, which included the history given by the complaining witness, her opinion was that the complaining witness had been sexually assaulted.

After the state rested, defendant called Alan Fine, M.D., who was qualified as an expert in obstetrics and gynecology.[4] Doctor Fine testified that he was an obstetrician gynecologist, specializing in total care of women of all ages with respect to their reproductive organs. He testified that he reviewed the complaining witness's medical information, which included a flash drive of physical-examination findings, a video of the exam, and a medical report. After reviewing the information provided, Dr. Fine concluded that the exam was a "normal virginal hymen and external pelvic examination[,]" meaning that the hymen appeared intact. He further testified that he could not, in his own knowledge and experience, "remember in 35 years ever

_____

[4] In addition to the expert witness, a police detective and a friend testified for the defense. The testimony of those two witnesses is not pertinent to the issues on appeal.

seeing a patient who had penetrated intercourse 30 times with a completely intact hymen[.]" Doctor Fine cited no studies or peer-reviewed work to support his opinion. He additionally testified that he rarely examines patients who are between eleven and thirteen years old.

After the conclusion of evidence and closing arguments, the jury returned with a guilty verdict on all three counts of the indictment. The defendant then filed a motion for a new trial, arguing that (1) defense counsel should have been given the opportunity to interview the complaining witness's classmate in view of discovery violations, due process issues, and confrontation clause problems related to the unexpected testimony by the complaining witness; and (2) the verdict was not supported by the weight of evidence, specifically with respect to the credibility of witnesses. After hearing from counsel for both sides, the trial justice explained that he found Dr. Barron, the state's expert witness, to be "open, honest, and credible" and Dr. Fine, the defense's expert witness, to be unconvincing and "not sufficiently experienced in terms of his opinions." He additionally found the complaining witness to be credible, because "[s]he gave specific details as to each" incident of molestation and "she was very candid on both direct and cross-examination." He also determined that, from his front-row seat at trial, he agreed with the jury's verdict on all charges. Therefore, the trial justice denied defendant's motion for a new trial.

On June 29, 2018, the trial justice sentenced defendant to forty-five years at the Adult Correctional Institutions, with thirty years to serve and fifteen years suspended, with probation, on each of the three counts, to be served concurrently.

A judgment of conviction was entered on July 26, 2018. The defendant had filed a premature but timely notice of appeal on May 9, 2018.[5]

## II

## Discussion

## A

## Motion for a Mistrial and Motion to Strike

On appeal, defendant submits that the trial justice erred in failing to grant a mistrial or to strike the complaining witness's entire unexpected testimony that she had disclosed the sexual assaults to "[o]ne of [her] classmates, but she didn't believe [her]." He asserts that the trial justice compounded the error by instructing the jury to only disregard that portion of the testimony indicating that her classmate did not believe her, but allowing as evidence the testimony that she had told one of her classmates something.

## 1

## Standard of Review

"The decision to pass a case and declare a mistrial belongs to the trial justice, and this Court gives great weight to his or her sound discretion." *State v. Fry*, 130 A.3d 812, 828 (R.I. 2016) (quoting *State v. Tucker*, 111 A.3d 376, 388 (R.I. 2015)). "As such, this Court will reverse a trial justice's ruling on appeal only if it was clearly wrong." *Id.* (quoting *Tucker*, 111 A.3d at 388). "We give great deference to the trial justice in this regard because he or she has a front-row seat at the trial and is in the best position to determine whether a defendant has been unfairly

---

[5] This Court has consistently considered a notice of appeal filed prior to the entry of the judgment or order appealed from to be timely. *See, e.g.*, *State v. Chase*, 9 A.3d 1248, 1252 n.2 (R.I. 2010) (holding that "[a]lthough [the] defendant's notice of appeal was premature, it was nevertheless valid"); *Otero v. State*, 996 A.2d 667, 670 n.3 (R.I. 2010) (same); *Bleau v. State*, 968 A.2d 276, 278 n.1 (R.I. 2009) (mem.) (same).

prejudiced." *Id.* (quoting *State v. Tully*, 110 A.3d 1181, 1191 (R.I. 2015)). "Where a defendant's contention is grounded in [his or] her fair-trial rights * * * 'we shall reverse only for an abuse of discretion that results in actual prejudice to him [or her].'" *Id.* at 829 (quoting *State v. Gomes*, 690 A.2d 310, 318 (R.I. 1997)).

Furthermore, "[i]t is well settled that 'the admissibility of evidence is a question addressed to the sound discretion of the trial justice and will not be disturbed on appeal absent a clear abuse of that discretion.'" *State v. Rathbun*, 184 A.3d 211, 215 (R.I. 2018) (brackets omitted) (quoting *State v. Lynch*, 854 A.2d 1022, 1031 (R.I. 2004)). Therefore, this Court will not disturb a trial justice's grant or denial of a motion to strike unless that ruling was clearly erroneous. *See id.* at 216.

**2**

**Analysis**

We start by noting that there was no indication that the disclosure at issue was known to the state in advance of the complaining witness's testimony. Without further guidance from the attorneys, the trial justice summarily denied the motion for a mistrial and granted, in part, the alternative motion to strike. He indicated that he was *sustaining* the motion to strike with respect to a portion of the testimony as hearsay. At that point defendant did not seek a ruling based on a Rule 16 analysis, or in *any way* object to the trial justice's determination. By failing to do so, defendant waived his argument as to the denial of the motion for a mistrial and partial denial of the motion to strike.[6] *See State v. Padilla*, 171 A.3d 976, 982 (R.I. 2017) ("It is well settled that a

---

[6] We also note that defense counsel used the complaining witness's testimony regarding the classmate in her closing argument to label the complaining witness as a "gossip girl[,]" to point out inconsistencies in the complaining witness's testimony, and to point out that the complaining witness had not told the police that she had told her classmate about the assaults.

litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court.") (quoting *State v. Bido*, 941 A.2d 822, 828-29 (R.I. 2008)).

Additionally, we hold that defendant waived his contention that the trial justice compounded the alleged error by instructing the jury to disregard the complaining witness's testimony that her classmate did not believe her. This Court has said that "a failure to object to a jury instruction precludes review of the instruction on appeal." *State v. Hallenbeck*, 878 A.2d 992, 1007 (R.I. 2005) (brackets omitted) (quoting *State v. Ibrahim*, 862 A.2d 787, 795 (R.I. 2004)). Our review of the record reveals that defense counsel never objected to the instruction given to the jury regarding that testimony. Instead, defense counsel's focus was on any further possible statement by the complaining witness on the topic, and the request for voir dire as to the identity of the classmate if that were to occur again. "This Court requires a specific objection at trial, to ensure that the trial justice has knowledge of the allegation of error and can 'have an opportunity to rule on it.'" *State v. Romero*, 193 A.3d 1167, 1172 (R.I. 2018) (quoting *State v. Pona*, 66 A.3d 454, 468 (R.I. 2013)). Nothing in the transcript suggests that defense counsel took issue with the instruction or that the trial justice was aware of any issue defense counsel may have had, aside from the concern about possible future statements regarding the complaining witness confiding in her classmate. As such, we conclude that defendant's argument alleging an error regarding the instruction to the jury is waived.

**B**

**Motion for a New Trial**

The defendant also argues that the trial justice erred in denying his motion for a new trial. He asserts that the trial justice overlooked and misconceived material evidence and that, therefore, the denial of defendant's motion for a new trial was clearly wrong. Specifically, he

argues that the trial justice overlooked inconsistencies in the complaining witness's testimony that, according to defendant, showed her motive to fabricate the allegations against him. Additionally, defendant argues that the trial justice erred in choosing to credit the testimony of the state's expert witness, rather than the defendant's.

## 1

### Standard of Review

"When ruling on a motion for a new trial, the trial justice acts as a thirteenth juror, exercising independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Silva*, 197 A.3d 1287, 1290-91 (R.I. 2019) (quoting *State v. Heredia*, 10 A.3d 443, 446 (R.I. 2010)). "In conducting our review, 'we accord great weight to a trial justice's ruling on a motion for a new trial if he or she has articulated sufficient reasoning in support of the ruling.'" *Id.* at 1291 (quoting *State v. Texieira*, 994 A.2d 132, 140-41 (R.I. 2008)). "Consequently, 'this Court will not overturn a trial justice's determination with regard to such a motion unless we determine that the trial justice committed clear error or that he or she overlooked or misconceived material and relevant evidence relating to a critical issue in the case.'" *Id.* (brackets omitted) (quoting *Texieira*, 994 A.2d at 141).

## 2

### Analysis

Our review of the record leads to the firm conclusion that the trial justice did not commit clear error or overlook or misconceive material evidence when, after indicating on the record his careful review of the parties' memoranda, he denied defendant's motion for a new trial. The trial justice then went through each of defendant's arguments.

As noted *supra*, defendant's first contention on appeal with respect to the denial of his motion for a new trial is that the trial justice overlooked inconsistencies in the complaining witness's testimony that showed her motive to fabricate the allegations against defendant. At the hearing on the motion for a new trial, the trial justice indicated that he found the testimony of the complaining witness to be "credible" because of the specific details she provided. He noted that he was troubled by her testimony regarding the cell phone and the destruction of SIM cards, but that ultimately "the [c]ourt must look at that one area of testimony in light of all of the testimony" of the complaining witness. He therefore found that her testimony was "sufficient to sustain [a] finding of guilt beyond a reasonable doubt." Although the trial justice did not go through each individual piece of evidence in his bench decision, it is clear to this Court that he exercised his independent judgment as to the credibility of the complaining witness and the weight of the evidence in rendering his decision. *See State v. DiCarlo*, 987 A.2d 867, 870 (R.I. 2010) ("In providing a rationale for a decision, however, the trial justice need not refer to all the evidence supporting the decision but need only cite evidence sufficient to allow this Court to discern whether the justice has applied the appropriate standards.") (brackets omitted) (quoting *State v. Banach*, 648 A.2d 1363, 1367 (R.I. 1994)).

On appeal, defendant also argues that the trial justice erred in choosing to credit the testimony of the state's expert witness, rather than defendant's. We disagree. When he ruled on the motion for a new trial, the trial justice "articulated sufficient reasoning in support of" denying the motion. *See Silvia*, 197 A.3d at 1291. He assessed the experience of the expert witnesses and their credibility, ultimately deciding that "Dr. Barron was open, honest, and credible[,]" and that Dr. Fine had limited experience with adolescents and, based on his testimony, did not seem to be "sufficiently experienced in terms of his opinions." Furthermore, unlike Dr. Barron, who

presented scholarly work to support her opinion, Dr. Fine relied upon his own experience alone, without basis in scientific studies, in drawing his conclusion. The trial justice therefore provided a clear justification on the record to support his decision to credit the testimony of the state's expert witness.

As such, we hold that the trial justice did not overlook or misconceive material evidence, and was not otherwise clearly wrong, when he denied the defendant's motion for a new trial.

## III

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to that tribunal.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Ricardo Franco. |
| **Case Number** | No. 2019-15-C.A. (P1/15-4108A) |
| **Date Opinion Filed** | February 19, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For State: <br><br> Owen Murphy <br> Department of Attorney General <br> For Defendant: <br><br> Lara E. Montecalvo <br> Office of the Public Defender |