February 12, 2021

**Supreme Court**

No. 2018-131-C.A.
(P2/15-2401ADV)

No. 2018-132-C.A.
(P2/15-2461A)

|  |  |
|---|---|
| State | : |
| v. | : |
| Michael Narcovich. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|                    |   |
|--------------------|---|
| State              | : |
| v.                 | : |
| Michael Narcovich. | : |

Present:  Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

# O P I N I O N

**Justice Goldberg, for the Court.**  These consolidated cases came before the Supreme Court on November 5, 2020, on appeal from a judgment of conviction following a jury trial.  The defendant, Michael Narcovich, was charged with eight offenses.  Five counts arose from a bar fight and its aftermath, when the defendant drove his vehicle into two women, causing injury, and then fled the scene, in violation of G.L. 1956 §§ 11-5-2, 31-26-1, and 31-27-1.2.  Three counts arose from violations of a no-contact order, in violation of G.L. 1956 §§ 12-29-4 and 12-29-5. For the reasons set forth in this opinion, we vacate the judgment of conviction.

## Facts and Travel

Because of the significant number of witnesses and the conflicting versions of events presented, we recount the trial testimony in detail.

On January 13, 2015, defendant sent Facebook messages to his ex-girlfriend, Lisa Spano, despite a previously issued no-contact order that prohibited him from communicating with her. Spano reported this incident to the police, and an arrest warrant issued. All of the remaining offenses occurred during the early morning hours of January 23, 2015. Despite the no-contact order between defendant and Spano, Spano; her daughter, Karina Blair;[1] Karina's then-boyfriend, David Hedges; and defendant went to the American Legion (the Legion), a bar located in the Riverside section of East Providence. The group, traveling in Spano's vehicle, arrived at 11 p.m., and everyone ordered a beer. As the evening progressed, a physical altercation developed inside the establishment between defendant and another patron, Joseph Whalen, and, soon thereafter, a larger melee among numerous bar patrons escalated in the parking lot. Ultimately, defendant left the scene, driving Spano's car, and struck two women as he fled the parking lot.

The defendant was charged with two counts of assault and battery with a dangerous weapon, to wit, a motor vehicle; one count of assault and battery resulting in serious bodily injury; one count of leaving the scene of an accident

___

[1] Spano's daughter is referred to as both Karina and Katrina in the trial transcripts. We shall simply refer to her as Karina.

resulting in physical injury; and one count of reckless driving to endanger resulting in physical injury. Additionally, he was charged with violating a no-contact order on January 13, 2015, and January 23, 2015, in East Providence, and on January 23, 2015, in Barrington.[2]

A jury trial commenced on June 13, 2017. Several witnesses testified and gave differing versions of the events of that evening. The following facts are gleaned from the testimony adduced at trial.

The state opened with testimony from Kyle Soderlund, a bar patron. Soderlund arrived at the Legion between 8:30 and 9 p.m. on January 22, 2015, and, he indicated, consumed three or four mixed drinks throughout the evening. Around midnight, he observed a patron, identified as Steven Luthy, arguing with defendant in the vicinity of the bar; Soderlund went over to intervene and suggested that defendant "enjoy the night" and "let everything go[.]" After that, a little after 1 a.m., a large group exited into the parking lot, and Soderlund observed defendant proceeding from the back of the building towards the parking lot. Soderlund testified that another argument broke out between defendant and patrons from the larger group that also involved "some shoving." At that point, defendant

---

[2] The defendant was charged by two separate criminal informations. One criminal information, P2/15-2401ADV, charged defendant with one count of violation of a no-contact order for activity that occurred in Barrington, Rhode Island, on January 23, 2015. The other criminal information, P2/15-2461A, contained the remaining charges. These two separate cases were tried together in the Superior Court and were consolidated on appeal.

entered the driver's seat of a four-door Nissan, while some females located at the rear passenger door of the Nissan were engaged in another altercation. Soderlund attempted to separate the women. He testified that he believed the women involved to be Spano, Karina, and a female named Angelica. Soderlund attempted to push Spano and Karina into the vehicle "just to get them out of there," and, with the rear passenger door open, defendant accelerated the vehicle, throwing Soderlund to the ground.

According to Soderlund, defendant drove the vehicle towards the back of the parking lot—where there is no means of egress—and then proceeded towards the front of the parking lot, where approximately fifteen bar patrons were blocking the exit. Soderlund testified that people attempted to jump out of the way as defendant drove through the crowd, and that two women, Katrina Esposito and Shanna Medeiros, were struck by the vehicle. Soderlund recalled that defendant did not stop but continued out towards the street and turned left; Soderlund then called 911. Later that night, Soderlund identified both the vehicle that struck the women and defendant as the person who had been driving it.

Sergeant Joseph Stewart of the East Providence Police Department testified that he was working on January 23, 2015, and, at approximately 1 a.m., he received a high-priority call that pedestrians had been struck at the Legion and that the suspect had fled the scene, possibly in the direction of Barrington. Soon

thereafter, he received a dispatch directing him to Spano's home in Barrington. When Sgt. Stewart arrived, he was accompanied by a Barrington police officer. As the officers approached the home, he could hear "yelling and shouting" from inside; the Barrington officer went to the front door, so Sgt. Stewart went around to the back door, where, with the help of his flashlight, he noticed a large male hiding under a pickup truck. Sergeant Stewart grabbed the man's leg and pulled him out from underneath the truck. The suspect identified himself as defendant, for whom there was an outstanding arrest warrant.[3] As he handcuffed defendant, Sgt. Stewart noticed that there were cuts or blood on the palms of his hands and dried blood on his face. The defendant told Sgt. Stewart that he was involved in a fight at the Legion and was attacked by a large group of people; he explained that he left the Legion before the police arrived because he knew about the arrest warrant.

The state next presented the testimony of Katrina Esposito, one of the women injured during defendant's flight from the Legion parking lot. She testified that she remembered going to the Legion around 9 p.m. with her friend Angelica Tetreault to have "some casual drinks." She stated that she had approximately four beers throughout the night. She recalled "a commotion happening at the other end of the bar" when someone bumped into another patron. Although she was not involved in that altercation, she testified, a bar employee instructed everyone to

---

[3] Sergeant Stewart also made an in-court identification of defendant as the individual hiding under the truck.

leave the bar. She testified that another fight broke out in the parking lot, but she was not involved in that altercation. The next thing Esposito recalled was waking up on the ground with no memory of how she ended up there. At that point, she could not feel her legs and thought she was paralyzed. She remembered noticing her friend, Shanna Medeiros, also lying on the ground, immobilized. An ambulance transported Esposito to Rhode Island Hospital, where she remained for over a week.

Esposito testified that she suffered two broken legs, a broken knee, a broken ankle, and fractured pelvic and hip bones, requiring surgery on both legs. After she was discharged from the hospital, she required treatment in a rehabilitation facility for one month; she remained in a wheelchair for the entirety of her stay at that facility. She returned home and was unable to walk for approximately three months. Esposito testified that, at the time of the trial (about two and a half years after the accident), she could not stand for long periods of time, had difficulty walking down stairs, was unable to run, and could not play with her children.

Alexander LaSalle, another patron of the Legion, testified that he arrived that night around 9 p.m. with his girlfriend, Kathryn Yergeau, to play pool. He recalled that, around 12:30 or 1 a.m., there was a "loud commotion" at the bar, involving "people yelling back and forth"; he did not get involved. When he and Yergeau left the Legion, there was a second commotion in the parking lot

involving the same group of people who had been arguing inside the bar. He saw a small four-door gray car with two men and two women inside. According to LaSalle, there was "scuffling" inside and outside of the vehicle, and both Esposito and Medeiros were involved and were trying to pull a woman out of the car. LaSalle then testified that the male driving the vehicle started to take off from a parked position and that Esposito and Medeiros fell out of the car as it rolled away. The driver then made a U-turn, drove to the other side of the parking lot, and— instead of driving out of the lot—he drove the car back through the area where it was originally parked and directly towards the bar patrons. LaSalle testified that he was able to move out of the car's path as it headed towards him, but he threw a beer bottle at the car.

LaSalle testified that he saw the vehicle hit Medeiros, sending her body into the air and then back onto the pavement. Although he did not see the vehicle strike Esposito, he saw her lying on the ground as "the car went over her" a second time. He then saw the vehicle leave the parking lot.

Joseph Whalen, a participant in both the altercation inside the bar and the fight in the parking lot, testified that he was at the Legion on January 22, 2015, with some friends and was drinking mixed drinks. He testified that he consumed "[p]robably a few more [drinks] than [he] should, but not too much." He was seated at the end of the bar when he heard defendant and someone else arguing, so

he tried to calm them down. Whalen explained that he and defendant exchanged "some words" and, when defendant pushed him, he pushed back. The defendant then punched him, and he punched back, sending defendant to the floor. Whalen was then grabbed from behind and ejected from the Legion.

Soon thereafter, people began exiting the bar, including defendant. The two men exchanged more than words. According to Whalen, defendant came running at him and tried to tackle him. Whalen got defendant onto the ground and hit him "a few times." Whalen then walked over to where other people were congregated, and defendant got into a vehicle. He further testified that defendant drove around the parking lot, steering the vehicle close to the group of people, then drove around the parking lot again and hit Esposito. He stated that defendant then backed up, "kind of gunned it with his car," and hit Medeiros, causing her to flip into the air. The defendant drove off towards Barrington, according to Whalen.

Shanna Medeiros, the second woman who was injured during defendant's flight from the Legion, testified that she had consumed a few beers that evening. She stated that she went outside and was standing in the Legion parking lot when she was hit by a car, sustaining injuries. She was taken by ambulance to Rhode Island Hospital, where she was treated for bruising all over her body, as well as head trauma, requiring staples in her head and stitches in her scalp and forehead.

She did not remember the impact from the vehicle; she just remembered standing in the parking lot and then waking up in the hospital.

Spano, defendant's ex-girlfriend, testified that she and defendant were in a romantic relationship for three years. As of January 13, 2015, she and defendant had broken up, and there was a no-contact order in place that prohibited defendant from contacting or speaking to her. Nevertheless, the two were arguing on that day, and she believed that defendant had slashed her tires. After defendant denied the allegations via Facebook messaging, Spano brought the communications to the police.[4] The messages resulted in one of the counts alleging a violation of the no-contact order.

Notwithstanding her belief about the slashed tires and the outstanding arrest warrant, Spano and defendant went to the Legion together on January 22, 2015, along with her daughter Karina and Karina's ex-boyfriend, David Hedges. Although she and defendant "were trying to work things out," Spano conceded that the no-contact order was still in place on that day. The foursome arrived at the Legion around 11 p.m., and Spano had two beers and she also "th[ought] everybody had a beer." According to Spano, a man she did not know walked by and banged into defendant, and the two men exchanged some words. She stated that another man then "ran over and started swinging at [defendant]." After a

_____

[4] The Facebook messages between defendant and Spano were introduced into evidence as full exhibits.

- 9 -

"little scuffle" between the two, the bartender escorted her group out of the establishment, through the back door. As Spano's group approached her vehicle, there was a large crowd surrounding the car; defendant took the keys and went to the driver's side of the vehicle. Spano testified that a woman from the crowd punched Karina in the face as she was trying to get in the back seat. Karina and two other women then engaged in a physical fight. Spano tried to pull the women away from her daughter, but a man punched her in the face and hit her with what she believed was a bottle. Hedges then attempted to drag a bleeding Spano into the back seat, but people were pulling at her legs. With Spano's legs still outside the vehicle, defendant began driving.

According to Spano, defendant drove around the parking lot, to avoid hitting a group of people who were on the side of the vehicle, and then drove out of the parking lot and back to Spano's house in Barrington. She testified that she had no recollection of defendant hitting anyone, and she claimed that she did not learn of injuries to any person until the police came to her house. By the time the police arrived at her house, she testified, defendant had left because of the no-contact order and because he and Karina were arguing. Spano eventually went to the hospital and was treated for her injuries from the altercation at the Legion.

Alexander LaSalle's girlfriend, Kathryn Yergeau, testified next. She stated that she and LaSalle went to the Legion at approximately 8:30 p.m. to meet up with

- 10 -

friends and play pool, but she did not drink.  She testified that she and her group of friends left the Legion after 1 a.m.; and, while they were standing in the middle of the parking lot, a group of people appeared from around the building, seemingly headed to their car, but began fighting with her friends.  Yergeau's group included Soderlund, Medeiros, and Esposito.  Yergeau stated that, although she did not know what the other group was upset about, they were yelling and throwing beer bottles and punches.

Yergeau also testified that Medeiros and Esposito were alongside defendant's vehicle and engaged in an altercation as the vehicle began to move away.  She stated that the car initially moved towards an exit, but it made a U-turn, circled the parking lot a few times, and then drove into Medeiros.  She watched the vehicle leave the parking lot and turn left, at which point she saw Esposito on the ground.

The state then called Detective Matthew Robinson of the East Providence Police Department; he testified that he was dispatched to the Legion at approximately 1:30 a.m. on January 23, 2015.  When he arrived on the scene, it was "very, very chaotic[,]" with fifteen or twenty people "yelling, screaming, swearing, crying, moving around, [and] running around."  There were two women who were injured: one was face down in a pool of blood and the other was face up about twenty feet or so away.  He identified the two women as Medeiros and

Esposito. At the scene, Det. Robinson "learned that a vehicle had traveled through the crowd and struck the two [female] victims[.]" He obtained a description of the vehicle involved, and somebody mentioned that defendant was the driver.[5] He then conveyed that information to dispatch.

The state's final witness, Christol Born, M.D., an orthopedic surgeon, testified that she was working at Rhode Island Hospital on January 23, 2015, and treated Esposito's injuries, including "a dislocation of her foot on one side[,] * * * a fracture on the upper part of her shin bone, the tibia, at the knee on one side, and on the other side, * * * she had a fracture of the lower part of the shin bone just above the ankle, and she also had a fracture of her hip socket."

The state rested its case, and defendant called David Hedges to testify. Hedges testified that he went to the Legion with defendant, Spano, and Karina around 11 p.m. on January 22, 2015. The group sat at the bar and ordered beers. When they were getting ready to leave, "a gentleman came by and shoved [defendant] to the side[,]" and then the altercation "spread through the whole bar." A bar employee instructed Hedges' group to exit through the side door because there was a group of people blocking the front entrance. In the parking lot, they encountered "a group of people with beer bottles * * * sitting by the cars." According to Hedges, a man struck Karina from behind on her way to the car,

---

[5] Most of the information Det. Robinson received at the scene came from Soderlund.

initiating a second altercation in the parking lot. As Karina was being "beat up[,]" Spano attempted to intervene and help her daughter, but ended up in a fight with two other women. Hedges testified that defendant was also being "beat up[,]" so he helped him into the car and then ran over to help Spano and Karina. Amid all the yelling, pushing, and punching, a man struck Spano with what Hedges believed to be a beer bottle. Hedges eventually secured Spano and Karina into the car, but people were trying to pull Karina out. As defendant attempted to drive away, people were throwing bottles and trying to jump on the car.

Hedges testified that defendant tried to pull out of the parking lot, but his path was blocked by a "chain of people" between the car and the main exit. The defendant "drove around and * * * tried to go out the other side," but people were "circling the car and jumping on it." He testified that they "eventually left the parking lot and drove * * * to [Spano's] house[,]" but he did not see anyone being struck by the car.

The jury returned a verdict of guilty on all eight counts. The defendant filed a motion for a new trial, which was heard and denied on September 14, 2017.[6] At the sentencing hearing, the trial justice found that count one (assault and battery resulting in serious bodily injury to Esposito) and count two (assault and battery

---

[6] The defendant's motion for a new trial was not timely filed, because it was filed on July 18, 2017, more than ten days after the finding of guilty by the jury on June 22, 2019. *See* Super. R. Crim. P. 33.

with a dangerous weapon upon Esposito) arose from the same operative set of facts. Accordingly, the trial justice dismissed count one. On the counts alleging assault and battery with a dangerous weapon, defendant was sentenced to fifteen years at the Adult Correctional Institutions, with six years to serve and the balance suspended, with probation. On count four, leaving the scene of an accident resulting in physical injury, defendant received six years to serve, with a two-year loss of driving privileges. On the count alleging reckless driving resulting in physical injury, defendant was sentenced to two years to serve, with a one-year loss of license. On the three counts of violating a no-contact order, defendant was sentenced to five years, with three years to serve and the remainder of the sentence suspended, with probation, and mandatory completion of domestic-violence counseling classes. All sentences were ordered to run concurrently. The defendant timely appealed.

Before this Court, defendant proffers three arguments. First, he argues that the trial justice committed reversible error when he instructed the jury that it was entitled to consider whether or not defendant was intoxicated at the time of the incident. Second, he contends that the trial justice erred by failing to declare that the merger doctrine applied to two violations of the no-contact order. Lastly, he assigns error to the denial of his motion for a new trial because, he contends, the

verdicts were against the weight of the evidence.  We address each contention in turn and will provide additional facts and procedural history as necessary.

**The Jury Instructions**

As part of the instructions to the jury, the trial justice outlined the requisite elements to support the charge of reckless driving, resulting in injury.  Included in that instruction, the trial justice stated:

> "The second element of the offense requires a showing that the defendant was operating in a reckless disregard of the safety of others.  * * *  In order to rise to the level of recklessness, the defendant's conduct must have reflected a wanton disregard for the safety of others and a heedless indifference for the consequences of his actions. * * *
>
> "In making that determination, you should consider the totality of the circumstances, including, but not limited to the weather, the lighting conditions, the condition of the road, the presence of traffic and control signs and signals, if any, in compliance or noncompliance with them.  You may also consider the speed of the defendant's vehicle. Although, I must caution you that speed, in and of itself, is not necessarily determinative of recklessness.  *In addition, you're entitled to take into account the condition of the defendant, including whether or not the defendant was intoxicated and the level of any such intoxication.*" (Emphasis added.)

At a sidebar conference, defendant objected to that portion of the charge instructing the jury that it could consider whether or not defendant was intoxicated. The defendant argued that there was "zero evidence as to that," and he did not want the jurors to have it in their minds that defendant was intoxicated.  He also

- 15 -

noted that this case did not contain an alcohol-related offense, and he requested that the trial justice take that sentence out of the instructions. The prosecutor responded that, although Spano's testimony was that defendant had been drinking, the state was not going to argue anything concerning defendant's possible intoxication; the state deferred to the trial justice on whether to strike that portion of the instructions. Defense counsel responded that evidence of drinking is not evidence of intoxication. The trial justice declined to amend his instructions, stating that he would allow the parties to argue the issue but noted that "[i]t is a standard instruction."

On appeal, it is defendant's contention that the trial justice erred when he instructed the jury that it could consider defendant's intoxication. Specifically, defendant maintains that intoxication was not an issue at trial and that there was insufficient evidence presented to conclude that defendant was intoxicated. The defendant submits that this instruction injected the issue of defendant's possible intoxication into a case without any relevant evidence to support it. We agree.

**Standard of Review**

This Court engages in *de novo* review of challenged jury instructions. *State v. Hunt*, 137 A.3d 689, 692 (R.I. 2016). In doing so, we "examine[] 'the instructions in their entirety to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them[.]" *State v. Cardona*, 969 A.2d

667, 674 (R.I. 2009) (quoting *State v. Krushnowski*, 773 A.2d 243, 246 (R.I. 2001)). "We examine the challenged portions of the jury instructions 'in the context in which they were rendered.'" *State v. Lynch*, 19 A.3d 51, 58 (R.I. 2011) (quoting *Cardona*, 969 A.2d at 674). We are mindful that the trial justice's jury instructions "need only adequately cover the law." *Cardona*, 969 A.2d at 674 (brackets omitted) (quoting *Krushnowski*, 773 A.2d at 246). Moreover, "an erroneous charge warrants reversal only if it can be shown that the jury could have been misled to the resultant prejudice of the complaining party." *Lynch*, 19 A.3d at 58 (brackets omitted) (quoting *State v. Sivo*, 925 A.2d 901, 913 (R.I. 2007)).

## Analysis

We begin by addressing defendant's reliance on *Handy v. Geary*, 105 R.I. 419, 252 A.2d 435 (1969), and *State v. Amaral*, 109 R.I. 379, 285 A.2d 783 (1972), as grounds for vacating the judgment. In *Handy*, this Court held that, whenever the issue of intoxication is raised, before evidence of the consumption of intoxicants may be presented to the jury, the trial justice must conduct a preliminary evidentiary hearing on the issue, in the absence of the jury. *Handy*, 105 R.I. at 431, 252 A.2d at 441-42. In *Amaral*, we expanded the application of this procedure to criminal cases. *Amaral*, 109 R.I. at 386-87, 285 A.2d at 787. The defendant points to *Handy* and *Amaral* in support of his contention that the jury should not have been instructed that it could consider whether he was intoxicated

unless intoxication was an issue in the case. In *Amaral*, the defendant faced criminal charges for the operation of a motor vehicle "in reckless disregard of the safety of others." *Id.* at 387, 285 A.2d at 787. We noted that "proof of intoxication is relevant for the jury to consider in determining whether defendant was operating his vehicle in reckless disregard of the safety of others," but that such evidence is inadmissible absent a preliminary hearing on the issue of intoxication, outside the presence of the jury. *Id.* at 387, 285 A.2d at 787, 788. Indeed, this Court explained that "evidence of the consumption of an alcoholic beverage is not admissible for the purpose of merely establishing that defendant consumed some before the accident." *Id.* at 387, 285 A.2d at 787. Notwithstanding, *Handy*, *Amaral*, and their progeny grapple with the *admissibility* of evidence of the consumption of alcohol, whereas the issue before this Court is a challenge to jury instructions, without foundational evidence to support the instruction. As such, defendant's reliance on the *Handy* and *Amaral* protocol is misplaced. Our analysis on the jury-instruction issue is straightforward.

It is well-settled that "[a] defendant charged with a crime 'is entitled to instructions that explain those propositions of law that relate to material issues of fact that the evidence supports.'" *State v. Ortiz*, 824 A.2d 473, 485 (R.I. 2003) (quoting *State v. Fetzik*, 577 A.2d 990, 996 (R.I. 1990)). To that end, it is incumbent upon the trial justice to craft and deliver jury instructions in accordance

- 18 -

with the law that applies to each issue raised at trial and the evidence before the jury. *See Cardona*, 969 A.2d at 674. In the case at bar, defendant's level of intoxication, if any, was not a material issue raised at trial and, critically, defendant was not charged with any alcohol-related offense. Our careful review of the extensive witness testimony elicited at trial, and set forth herein, confirms that there was not a scintilla of evidence that defendant was intoxicated on the night in question. The state concedes there was no evidence of intoxication and scant evidence that defendant was even drinking.[7] The only testimony that defendant may have consumed an alcoholic drink is Spano's testimony that she "th[ought] everybody had a beer[,]" which is insufficient to establish intoxication. In the absence of evidence of intoxication or an allegation of an alcohol-related offense, whether defendant was intoxicated and the level of intoxication was not a material issue in this case, and it was error to instruct the jury that it was entitled to consider it.

By permitting the jury to consider whether defendant was intoxicated, the trial justice injected the issue into the jury's deliberations—to defendant's prejudice—and invited the jury to speculate about facts not in evidence and outside of the scope of the dispute. We have recognized the need for great caution when introducing the issue of intoxication to juries "because of the undue potential * * *

---

[7] The state does not contest that the intoxication instruction was superfluous, but it contends that the mistake should be deemed harmless.

to cause confusion and to be unfairly prejudicial[.]" *State v. Rice*, 755 A.2d 137, 149 (R.I. 2000) (quoting *Amaral*, 109 R.I. at 386, 285 A.2d at 788). Because we cannot conclude with confidence that the erroneous instruction did not mislead the jury or otherwise affect the verdict, we deem this reversible error.

## Double Jeopardy

After the state rested its case, defendant moved for judgment of acquittal on several counts pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure. We reach this issue because we are directing a new trial. The defendant argues that two separate counts of violating a no-contact order on January 23, 2015, should merge because the counts were alleged to have taken place on the same night, within minutes of each other.[8] One violation stemmed from defendant's presence with Spano at the Legion in East Providence, and the other from defendant's presence at Spano's home in Barrington. The defendant argues that the two counts must merge because, even though the activity spanned two jurisdictions, it arose from the same occurrence.

In addressing the merger of these two counts, the trial justice found that one count of violating the no-contact order occurred "sometime on January 23rd of

---

[8] The defendant also argued before the trial justice that count one (assault and battery resulting in serious bodily injury) and count two (assault and battery with a dangerous weapon) must merge because they were based on the same operative facts. He asserted that count six (reckless driving) must also merge with count one. Those motions are not relevant to this appeal.

- 20 -

2015 in the early morning hours in the [City] of East Providence[,]" and the other count "occurred several minutes later * * * a distance away in the Town of Barrington[,] * * * after the * * * violation in East Providence on the same morning." The trial justice, citing *State v. Scanlon*, 982 A.2d 1268 (R.I. 2009), concluded that the two incidents were "separate and apart" given the "separation of incidents by both time and space, space being geographic scope," and denied the motion. The defendant renewed his motion at the close of the evidence, incorporating the same arguments; the trial justice again denied the motion. The defendant pressed his contentions for a third time at the sentencing hearing; however, the trial justice proceeded to sentence defendant on both counts.

Although defendant's objection was characterized at times as merger of the counts, we previously have held that "[m]erger is essentially a double jeopardy argument." *State v. Grayhurst*, 852 A.2d 491, 500 (R.I. 2004). Accordingly, Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure controls. Rule 12(b)(2) provides, in pertinent part: "The defense of double jeopardy * * * may be raised *only by motion before trial. * * ** Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver." (Emphasis added.) Here, our review of the record shows that defendant did not raise his merger/double-jeopardy contention in a pretrial motion pursuant to Rule 12(b)(2), and he delayed moving

to dismiss until after the state had rested its case. However, despite defendant's failure to file a motion under Rule 12, the trial justice nevertheless entertained argument on three separate occasions and ultimately ruled on the question, erroneously we conclude. Although there is no doubt that this issue was not timely raised, we set aside the procedural infirmity and reach defendant's substantive argument.

"A double-jeopardy situation arises when, for example, the state charges a defendant with two crimes arising from the '*same act or transaction*' and neither crime charged requires proof of an element that the other does not." *State v. Haney*, 842 A.2d 1083, 1084 (R.I. 2004) (quoting *State v. Davis*, 120 R.I. 82, 86, 384 A.2d 1061, 1064 (1978)). In determining whether two crimes arise from the same transaction, we consider whether there was a break or stop in the behavior before it began in another place. *See id.* at 1085 (finding no double-jeopardy violation where the defendant assaulted the victim in one town and committed a second assault upon the victim fifteen minutes later in another town); *see also Scanlon*, 982 A.2d at 1278 (concluding no double-jeopardy violation where two counts of assault arose from different acts). In this case, the two violations charged on January 23, 2015, flowed from defendant and Spano being at the Legion together and then arriving at Spano's home in Barrington shortly thereafter. Because there was no intervening act or occurrence sufficient to break the continuity of contact

between Spano and defendant that evening, the violation traveled along with the vehicle's occupants from one municipality to the next.

We therefore are satisfied that the conduct that predicated the no-contact order violation in East Providence and the conduct that resulted in the violation in Barrington was part of a single and continuous act. Accordingly, the trial justice erred in ruling that the two violations did not merge.

## Motion for a New Trial

The defendant's final contention on appeal is that the trial justice erred in denying his motion for a new trial because the guilty verdicts were against the weight of the evidence. The defendant's motion for a new trial was not timely filed. However, because we vacate the judgment of conviction on other grounds, we need not reach this issue.

## Conclusion

For the reasons set forth in this opinion, we vacate the judgment of conviction and remand the case to the Superior Court for a new trial.

Justice Flaherty participated in the decision but retired before its publication. Justices Lynch Prata and Long did not participate.



STATE OF RHODE ISLAND

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | State v. Michael Narcovich. |
| **Case Number** | SU-2018-0131-C.A.<br>(P2/15-2401ADV)<br><br>No. 2018-132-C.A.<br>(P2/15-2461A) |
| **Date Opinion Filed** | February 12, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice William E. Carnes, Jr. |
| **Attorney(s) on Appeal** | For State:<br><br>Owen Murphy<br>Department of Attorney General<br>For Defendant:<br><br>Lara E. Montecalvo<br>Office of the Public Defender |